[No. 13510. Department One. January 4, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. G. C. KLEIN, *Appellant*.[1]

LARCENY—DRIVING AWAY CATTLE—RECEIVING STOLEN GOODS—EVIDENCE—SUFFICIENCY. A conviction of larceny as accessory before the fact, and of buying and selling stolen property with knowledge of the theft, under Rem. Code, § 2601, subds. 1 and 5, is sustained, where there was evidence to the effect that the accused hired two men to take two steers from the pasture of the prosecuting witness and drive them to the accused's slaughter house where he butchered them, and that part of the carcasses, which were unusually large, were traced to the possession of the accused.

INDICTMENT AND INFORMATION—JOINDER OF OFFENSES—ELECTION—STATUTES. Under Rem. Code, § 2601, defining the crime of larceny as capable of being committed in one of the several ways stated disjunctively in the 5th subdivision of the section, and § 2260, abrogating the common law distinction between principals and accessories before the fact, an information charging larceny by hiring two men to commit the theft of two steers, and that the men actually committed it, and that defendant purchased and received the steers from them, is not duplicitous in charging inconsistent offenses, and it is not error to refuse to require an election.

CRIMINAL LAW—ACCESSORIES—INSTRUCTIONS. In a prosecution for being an accessory to a larceny, it is proper to instruct that when one who, with intent to incite another to commit a crime, intention-

[1]Reported in 162 Pac. 52.

ally signifies to that other his assent, and the other as a result of such incitement does commit it, the first person aids and abets; since the word "signify" implies an overt act beyond a mere tacit assent.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered December 28, 1914, upon a trial and conviction of larceny and of receiving stolen property. Affirmed.

*H. J. Snively*, for appellant.

*Harold B. Gilbert* and *Sydney Livesey*, for respondent.

ELLIS, J.—Defendant, by a jury, was found guilty upon an information charging in substance that, on or about June 10, 1914, he encouraged, advised, induced, hired, aided, assisted, abetted, and procured one Charles Matney and one George Yeager to take, lead and drive away two steers belonging to another, with intent to deprive and defraud the owner thereof, by reason whereof Charles Matney and George Yeager, on or about that date, did take, lead and drive away two steers, each weighing about 1,500 pounds, each of a value of about $125, and each being the property of the Pacific Cold Storage Company, a corporation; and further charging him with buying and receiving such steers from Matney and Yeager knowing them to have been stolen. We shall not quote the lengthy information. It will suffice to say that it charged defendant with larceny as an accessory before the fact, under subdivision 1 of Rem. Code, § 2601, and with buying and receiving stolen property with knowledge of the theft, under subdivision 5 of the same section.

While sharply conflicting, it is not disputed that there was evidence tending to show that, on and prior to July 10, 1914, the Pacific Cold Storage Company owned a number of unusually large steers which were kept in a pasture near the town of Toppenish, in Yakima county; that two of these having unusually large feet were missed from the pasture on July 11, 1914, and a day or two later were tracked by the

men in charge to defendant's slaughter house, on the west side of the Yakima river opposite the town of Granger; that pieces of meat, such as would be produced only from unusually large animals, were found in defendant's meat market in the town of Granger, and that one head conforming to that of one of the steers, and two hides of large animals of the color and bearing the brands of the two missing steers, were found secreted near defendant's slaughter house. We shall not discuss the evidence in detail, since it is not disputed that there was evidence, though contradicted, from which the jury were justified in believing that defendant hired two men, Matney and Yeager, to take the two steers from the pasture on the night of July 10, 1914, and drive them to his slaughter house; that by prearrangement they awakened defendant by tapping upon the window of his residence near the slaughter house; that, with the assistance of the two men, defendant slaughtered one of the steers that night and the other the next day; that defendant paid the two men $43 for the steers and took the meat, shipping part of it to Spokane and selling part of it at his meat market in Granger. Though most of the evidence as to defendant's connection with the crime was found in Yeager's testimony, Matney having broken jail and escaped prior to the trial, and though Yeager told a somewhat different story when first arrested, the credibility of his testimony at the trial, corroborated as it was in many particulars by other testimony and circumstances, was clearly for the jury.

When the state had rested, counsel for defendant moved that the prosecution be required to elect whether it would ask for a conviction of defendant as an accessory before the fact, or as a principal in the act of larceny, or as a receiver of stolen property. The motion was denied, the court holding that the question of defendant's guilt as an aider and abetter in the actual theft and as a receiver of stolen property knowing of the theft should be submitted to the jury. When the evidence was all in, the court gave instructions submitting

these two questions.  From the judgment of conviction and sentence, defendant has appealed, assigning two grounds.

(1)  It is first asserted that the court erred in refusing to compel the state to elect and in instructing the jury that it might convict appellant either as an aider and abetter in the larceny or as a receiver of the stolen property.  In this connection, the argument rests upon the postulate that the charges of actual commission of the larceny and of receiving the stolen goods are, in their nature, inconsistent, the one disproving the other.  It is said that one cannot be holden as receiver of goods which he himself has stolen.  Sustaining authorities are cited, but we find it unnecessary to review them.  The postulate may be accepted as sound without invalidating either the information or the instruction here involved.  The information did not charge appellant with participating in the actual theft.  It did not charge that he was even present when the theft was committed.  On the contrary, it charged that he hired and procured the other two men to commit the theft, and in terms that the other two men actually committed it and that he purchased and received the steers from them knowing that fact.  There is nothing inconsistent in the things charged against appellant.  Rather the knowledge that the cattle had been stolen when he received them necessarily resulted from his procurement of the theft.  Any argument to the contrary must ignore the obvious.  There is no inconsistency in being an accessory before the fact and a receiver afterwards.  *Regina v. Hughes*, 1 L. T. 450; *People v. Feinberg*, 237 Ill. 348, 86 N. E. 584.

"The fact that, under the Penal Code, by aiding and abetting the crime of larceny he became a principal, in no way brought such an accessory within the principle of the rule that a person taking goods feloniously cannot receive them from himself with a felonious intent.  This rule, however, in no respect applies to an individual who was not present at the commission of the crime.  Although, under the Penal Code he was guilty of the principal offense, yet, receiving the goods from the actual thief, knowing their origin, he is subject to the

penalty for receiving stolen goods." . *People v. Rivello*, 39 App. Div. 454, 57 N. Y. Supp. 420.

Our criminal code, in § 2601, *supra*, defines the crime of larceny as capable of being committed in any of the several ways set out disjunctively in the five subdivisions of that section. Another section, 2260, abrogates the common law distinction between principals in the first and second degrees and principals and accessories before the fact. It classifies and makes punishable as principals all aiders and abetters whether present or absent and whether participating or only "counseling, encouraging, hiring, commanding, inducing or otherwise procuring" the commission of the offense. See, also, Rem. Code, §§ 2007 and 2262. In other words, the defining statute enumerates disjunctively a series of acts, either of which separately, or all together, so far as they are not in their nature inconsistent, may constitute the single offense of larceny. In such a case it is thoroughly settled that the information may charge in a single count the commission of the offense in any, or, by conjunctive allegation, in all of the enumerated and not inconsistent ways. "And proof of it in any one of the ways will sustain the allegation." *State v. Holedger*, 15 Wash. 443, 46 Pac. 652; *State v. Newton*, 29 Wash. 373, 70 Pac. 31; *State v. Ilomaki*, 40 Wash. 629, 82 Pac. 873; *State v. Adams*, 41 Wash. 552, 83 Pac. 1108; *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989; *State v. McBride*, 72 Wash. 390, 130 Pac. 486; *State v. Pettit*, 74 Wash. 510, 133 Pac. 1014; 1 Bishop, New Criminal Procedure (2d ed.), § 436; 14 R. C. L. 40.

There was neither allegation nor evidence that appellant was present at the actual theft. There was evidence that he advised and procured its commission and he finally admitted that he received the carcasses of the animals brought to his slaughterhouse by the other two men. There was no error in refusing to compel an election. The instruction complained of was proper as applied to the evidence.

(2)  The giving of the following instruction is also assigned as error:

"In order to make a person guilty of a crime it is not always necessary that he do the criminal act with his own hands. If a person with intent that another shall commit a crime and to incite him to commit it intentionally signifies to that other his assent to the other's commission of the crime, and if the other is thereby incited to commit the crime, and as a proximate result of such incitement does commit it, the person who signifies to the other his assent to the commission of the crime aids and abets its commission in the sense I shall use said words in these instructions."

It is argued, in substance, that under this instruction a conviction for aiding and abetting would have been justified by proof of mere knowledge and tacit assent by silence. An instruction reasonably capable of such a construction would be clearly erroneous under the rule announced in *State v. Peasley*, 80 Wash. 99, 141 Pac. 316. Had the word "assent" been used disjunctively in the instruction here, as it was in the one there involved, there would be force in appellant's criticism. In that case it is said that there must be some form of overt act; "the doing or saying of something that either directly or indirectly contributes to the criminal act." The instruction here involved palpably meets that criterion. The instruction says that when one "with intent" and "to incite" another to commit a crime "intentionally signifies to that other his assent" and the other as a "result of such incitement does commit it," the first person aids and abets. The quoted words necessarily imply some overt act by deed or word "signifying" the assent. The verb "signify" means "to make known by signs or words; express; communicate; announce; declare." See Student's Standard Dictionary.

The record presents no error warranting a reversal. Judgment affirmed.

MORRIS, C. J., MAIN, WEBSTER, and CHADWICK, JJ., concur.