[Criminal No. 551.  Filed May 1, 1924.]

[225 Pac. 332.]

## JOHN ALLEN and ALBERT ALLEN, Appellants, v. STATE OF ARIZONA, Respondent.

1. CRIMINAL LAW — DEFENDANT NOT ENTITLED TO INSTRUCTION TO GIVE STIPULATION, ADMITTED AS EVIDENCE, WEIGHT AS EVIDENCE. Admission of a stipulation between counsel as to what an absent witness would have testified gave the stipulation standing as evidence, and defendant was not entitled to an instruction to give it weight as such.

2. BURGLARY—CRIMINAL LAW—INSTRUCTION AS TO EVIDENTIARY EFFECT OF POSSESSION OF RECENTLY STOLEN PROPERTY HELD CORRECT, AND NOT TO SINGLE OUT EVIDENCE.—An instruction that the jury must first find that the property was stolen before possession

———————

1. See 14 R. C. L. 760.

2. Possession of stolen property as evidence of burglary, see note in 19 Ann. Cas. 1281.  See, also, 4 R. C. L. 440.

2. Possession of recently stolen property as evidence of larceny, see note in 12 L. R. A. (N. S.) 199.

of recently stolen property could be considered as any evidence, and, even then, was only a circumstance from which, if unexplained, guilt might be inferred, correctly stated the rule as to evidentiary effect of possession of recently stolen property, and did not violate the constitutional rule against singling out and commenting on evidence.

3. BURGLARY—DEFENDANTS' POSSESSION OF STOLEN GOODS HELD SHOWN BY SUBSTANTIAL EVIDENCE.—That oats and hay found in defendants' possession were stolen *held* shown by substantial evidence.

4. BURGLARY—IF INFERENCE FROM POSSESSION OF RECENTLY STOLEN PROPERTY BE EXPLAINED, NO INFERENCE OF GUILT CAN BE DRAWN. The inference from possession of recently stolen property, being one of fact, may be explained, and, if explained, ṇo inference of guilt can be drawn from it.

5. BURGLARY — RECENT, EXCLUSIVE, UNEXPLAINED POSSESSION OF STOLEN PROPERTY JUSTIFIES JURY CONCLUSION OF GUILT.—If possession of stolen property by defendant is recent, exclusive, anα unexplained, the jury may justly conclude that defendant may have been connected with, or concerned in, the *corpus delicti.*

6. CRIMINAL LAW—INSTRUCTION AS TO POSSESSION OF STOLEN PROPERTY INVADES JURY'S PROVINCE IF INDICATING COURT ATTACHES SPECIAL IMPORTANCE THERETO.—If an instruction would have the effect of impressing the jury that the court attached special importance to testimony as to defendants' possession of stolen property, or any part of the evidence, it might be said to invade the jury's province.

7. CRIMINAL LAW—WEIGHT OF CIRCUMSTANTIAL EVIDENCE FOR JURY.— The weight of evidence, circumstantial or direct, is for the jury.

8. BURGLARY—FACTS HELD TO INVOLVE BOTH DEFENDANTS IN CORPUS DELICTI IF ONE WAS CONCERNED.—Where two defendants admitted being together at the time of the burglary, in the same wagon, in which were the stolen sacks of grain and baled hay, on the highway going away from the burglarized home, if one was concerned in the *corpus delicti* the other necessarily was.

9. CRIMINAL LAW — FAILURE TO GIVE FORMS FOR VERDICT OF "NOT GUILTY" AS TO EACH OF TWO DEFENDANTS HELD NOT PREJUDICIAL.—Where two defendants were tried together, for the same offense, and the jury could scarcely have found one guilty and the other innocent, the court's failure to include forms provid-

---

4.   See 4 R. C. L. 440.

5.   Proof of *corpus delicti* in larceny, see notes in 68 L. R. A. 40, 48, 54, 56, 65; 28 L. R. A. (N. S.) 536; L. R. A. 1916B, 846. See, also, 4 R. C. L. 441.

6.   See 14 R. C. L. 730, 741, 744.

7.   See 10 R. C. L. 1004.

ing for verdict of "not guilty" with reference to each defendant *held* not prejudicial, since the jury could easily change the forms or prepare others.

10. CRIMINAL LAW—QUESTIONS AS TO OTHER OFFENSES AND SEARCH OF PREMISES HELD IMPROPER. — In a burglary prosecution for stealing oats and hay, cross-examination questions to defendant, whether he had been searched, shortly before, for stolen beef, number of times his place had been searched for stolen goods, number of times he had been arrested for violations of law, *held* improper.

11. CRIMINAL LAW—ADMISSION OF EVIDENCE WITHOUT OBJECTION, NOT REVIEWABLE.—Admission without objection of evidence of other offenses and search of defendant's premises is not reviewable error.

APPEAL from a judgment of the Superior Court of the County of Coconino. J. E. Jones, Judge. Affirmed.

Messrs. Townsend, Stockton & Drake, Mr. C. B. Wilson, Messrs. Baker & Whitney and Mr. George R. Lewis, for Appellants.

Mr. John W. Murphy, Attorney General, Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—The appellants John and Albert Allen are prosecuting this appeal from a judgment of conviction of burglarizing the dwelling-house of W. W. Coleman, on or about March 30, 1922.

The defendants and Coleman, and in fact most of the witnesses in the case, were ranchers or farmers, engaged in growing small grain, grain hay, and potatoes in what is known as Garland Prairie, Coconino county. The Coleman crop of oats for 1921,

10. Proof of other crimes upon prosecution for burglary, note, 16 Ann. Cas. 669. See, also, 4 R. C. L. 442.

11. See 26 R. C. L. 1044.

See 9 C. J. 1074, 1080, 1082, 1084, 1090; 16 C. J. 595, 929, 1005, 1038, 1040; 17 C. J. 56, 349.

after threshing, was sacked in barley sacks and stored in the Coleman dwelling-house during the winter months. The Coleman family left the ranch November 21, 1921, and returned April 12, 1922. Upon their return they discovered that their dwelling-house had been broken into and some 30 sacks of oats taken. Leading to the house from the road and from the house back into the road were wagon tracks, indicating that whoever got the oats employed a wagon and team to carry them away. It is a well-traveled country road, passing by the Coleman house in an easterly and westerly direction, and leading to and by the John Allen place, about six and one-half miles distant, in a northerly direction. Near the Coleman place a Miss Ellefson owns some land on which were a dwelling, garage, and outhouses. She also raised oats in 1921 and stored them in her garage. The evidence was to the effect that John Allen was left in charge of Miss Ellefson's place, during her absence in the winter of 1921–22, with power to sell or dispose of her oat crop or any part of it. Miss Ellefson being sick and unable to attend the trial, it was stipulated that if she were present she would testify to the above facts. At the trial the defendants stated they took their team and wagon from John Allen's place on the afternoon of March 29, 1922 (or about that time), down to the Ellefson place and got some sacked oats and hay and returned the following day. The contention of the prosecution was that appellants did not go to the Ellefson place, but went to and broke into the Coleman dwelling and took therefrom the oats and hay. Appellants' insistence is that they had a right to take oats from the Ellefson place, and that it was from there they got them, and they were therefore entitled to have given the following instruction:

"The stipulation between the county attorney, for the state of Arizona, and the defendants, is evidence in

this case, and you are instructed to give said evidence the same weight and consideration as if Miss Ellefson testified to such orally on the stand.''

It is contended it was error to refuse their request. We hardly think it was necessary that the court should have told the jury what was admitted as evidence should be considered as such. The fact of its admission gave the stipulation that standing. It needed no special mention, but, like every other item of evidence, was to be weighed by the jury uninfluenced by any word or action of the court. If the fact that appellants could lawfully have taken oats from the Ellefson place had any bearing whatever upon the question as to whether they unlawfully took them from the Coleman dwelling, we think the appellants got the benefit of it without the court's emphasizing the fact by an instruction. Because there was open to appellants an honest way to get the oats might amount to nothing towards showing appellants pursued that way. Always there is the opportunity to be honest when one acts otherwise.

It is next said the court should not have instructed on the evidentiary effect of possession of recently stolen property, because, it is said, there was no substantial evidence that the oats in appellants' possession were stolen, and, at all events, the instruction singled out and gave undue prominence to that feature of the evidence.

The instruction was conditioned that the jury must first find that the property was stolen before possession thereof could be considered as any evidence, and even then they were advised it was only a circumstance from which, if unexplained, they might infer appellants were concerned in the theft. The instruction correctly states the rule as to the evidentiary effect of possession of recently stolen property, as frequently announced by this court, and we think the rule generally followed throughout the

26 Ariz.—21

country. *Vincent* v. *State,* 16 Ariz. 297, 145 Pac. 241; *Cline* v. *State,* 21 Ariz. 554, 192 Pac. 1071; *Smith* v. *State,* 22 Ariz. 229, 196 Pac. 420; *Gibson* v. *State,* 25 Ariz. 236, 215 Pac. 729; *Taylor* v. *Territory,* 7 Ariz. 234, 64 Pac. 423; *State* v. *Swarens,* 294 Mo. 139, 241 S. W. 934.

As to whether there was any substantial evidence that the oats found in the possession of appellants were stolen, we will simply say: Appellants were seen driving along the road from the direction of the Coleman place, in the direction of the Allen place, at about the time the burglary of the Coleman house is thought to have taken place, with a load of sacked grain and baled hay. Immediately after they had gone by, there was found upon the road a sack of oats which, on the trial, was identified as a part of the Coleman oats. One witness testified that he saw the sack almost instantaneously after the appellants' vehicle had passed, and one of the appellants (Albert Allen) subsequently admitted having lost a sack of oats at that place. There was testimony that a wagon was tracked from the Coleman place to the Allen place upon this occasion.

It is also claimed the court invaded the province of the jury in singling out this feature of the evidence and calling their attention to it and to its evidentiary value. If the instruction were in any of its aspects unfavorable to appellants, the criticism might be well taken. The inference that may be drawn from the possession of recently stolen property being one of fact according to the great weight of authority may be explained away and shown to be innocent. If it is explained, no inference of guilt could be drawn from it. If the possession is recent, exclusive, and unexplained, then the jury may justly conclude that the possessor may have been connected with or concerned in the *corpus delicti,* whether burglary or larceny. Wharton, Criminal Evidence (10th ed.), par.

758; *Smith* v. *State, supra.* The giving of this instruction or the rule embodied in it is almost as frequent as trials for larceny or burglary. We have not found any case, nor have counsel for appellants called our attention to any, in which such instruction has been held to invade the province of the jury. Every allusion to particular testimony or parts of evidence is not necessarily a violation of the rule that forbids the court singling out and making unduly prominent some parts of the evidence. If the instruction would have the effect of impressing the jury that the court attached any special importance to this particular testimony or parts of the evidence, then it might be said that it was an invasion of the province of the jury. 16 C. J. 1040, par. 2480. The announcement of the well-settled rule for determining the effect of such possession, when unexplained, not being a comment upon the testimony introduced to show such possession, does not fall under the condemnation of the constitutional rule that forbids the court from charging the jury with respect to matters of fact or commenting thereon.

It is next contended the evidence was insufficient to support the verdict especially as to the appellant Albert Allen. This proposition is largely predicated upon the fact that the evidence was almost wholly circumstantial. The weight of the evidence, whether direct or circumstantial, is a matter for the jury. When the evidence is of the latter kind, it is for the jury to say whether it excludes every reasonable hypothesis consistent with the innocence of the accused. That it may not be so convincing to us, or may be hard to reconcile in some of its aspects, or may appear in some of its features to refute or negative guilt, or to cast doubt thereon, will not justify the court in setting aside the verdict of the jury.

More of the circumstances developed in the trial directly affect John Allen than Albert. But one

thing seems quite certain, if John Allen was concerned in the *corpus delicti*, Albert also was. They admit being together on the occasion the prosecution claims the Coleman house was burglarized; witnesses testified to seeing them in the same wagon on the highway going from the direction of the Coleman house, and that in the wagon were sacks of grain and some baled hay. Appellants explained they were returning to their homes from the Ellefson plaĉe, where they obtained said grain and hay. This conflict was resolved against appellants by the jury, and it is inconceivable how the jury could have found one guilty and the other innocent.

When the jury retired to consider its verdict, the court gave them several forms of verdict. It is complained that no form provided for a verdict of "not guilty" with reference to Albert Allen. That is also true with reference to the other appellant. We must assume that the jury were men of common sense and experience, and it would seem very improbable that they would have returned a verdict of guilty against Albert Allen had they entertained any doubt of his guilt. We cannot believe that they were influenced by the absence of the form of verdict suggested. It would have been no trouble nor required any skill to change the form of verdict handed to the jury to be used by them in event they found both defendants not guilty, or to use that form in preparing another had they concluded Albert Allen was not guilty but that John Allen was.

It is contended that the county attorney was guilty of gross misconduct and prejudicial error in asking the defendant John Allen, upon his cross-examination, the questions following:

"Q. Mr. Hamilton had searched you a few days before that for stolen beef? A. Yes, sir, on his own hook.

"Q. Without a warrant? A. Yes, sir; he had a warrant, but he had signed his own name to it.

"Q. How many other times has your place been searched for stolen goods?

"Mr. Lewis: I object to that as immaterial.

"The Witness: Only that one time has it ever been searched that I know anything about it.

"Mr. Gold: Q. Searched this time for stolen beef? A. Yes, sir.

"Q. Did he tell you what he came up for? A. He didn't tell me at the time, told me after he read the warrant.

"Q. And he didn't happen to find anything at that time, did he? A. No, sir; he didn't find nothing.

"Q. And you were still angry about that search? A. Certainly. Why wouldn't I be? Isn't that a slur to a man's name?

"Q. Now, I don't know what you mean by that. How many times have you been arrested for violations of the law?

"Mr. Lewis: We object to that, your Honor.

"The Court: Objection sustained."

This kind of cross-examination has been many times condemned by this court. It is not fair and ought not to be indulged in by prosecuting officers, and we will not hesitate to reverse for such misconduct when the proper exception is taken at the trial. *Britt* v. *State,* 25 Ariz. 419, 218 Pac. 981; *Walker* v. *State,* 23 Ariz. 59, 201 Pac. 398. Where the accused is represented by counsel who sits by and acquiesces in such aspersions upon his client, without asking the court to rule thereon, it presents a different question than where objection is interposed. When the question of the admissibility of the evidence is not raised at the trial, it cannot be said that its admission was error reviewable by the appellate court, since there was no ruling of the lower court. The assignment is not upon any ruling of the court, but is directed solely at the character of the questions. If the admission of such evidence when not objected to should be determined to be erroneous, counsel might well, especially where the case was a difficult one,

keep silent when he should speak and hold the error in reserve for the appellate court. This would often have the effect of defeating justice rather than conserving it. Again, counsel permitting the introduction of such evidence without objection may often have in mind to use it later to advantage. Reverting to the questions and answers, it will be noted that the court promptly sustained the objection when interposed, and doubtless would have stricken the testimony if asked to do so. The only exception to this was a failure to rule upon the objection to the question, "How many other times has your place been searched for stolen goods?" The answer of the witness was more to his benefit than hurtful, when considered in connection with the previous and subsequent questions and answers to which no objection was made. For the reason that no proper objection was interposed to this incompetent evidence, we do not feel that error of which we can take notice was committed.

We have carefully examined the transcript of the testimony, not with a view of weighing it or of determining whether we approve of the jury's verdict, but solely to determine if upon any view thereof the jury was justified in finding appellants guilty of the very serious charge of burglary. Taking into consideration the jury's opportunity to see the witnesses and hear them tell their stories, and their right and power to believe and accept some of the evidence as true and disbelieve and reject other parts of it as false, and thus to reconcile conflicts and contradictions, there is ample in the record to support the verdict of guilty.

Not finding any reversible error, the judgment of conviction is affirmed.

McALISTER, C. J., and LYMAN, J., concur.