[No. 27467. Department Two. August 5, 1939.]

THE STATE OF WASHINGTON, *Respondent,* v. HENRY DONCKERS, *Appellant.*[1]

*Frank E. Hammond,* for appellant.

*B. Gray Warner, Albert D. Rosellini,* and *H. I. Kyle,* for respondent.

[1]Reported in 93 P. (2d) 355.

MILLARD, J.—It is a crime under the statute (Rem. Rev. Stat., Vol. 7A, § 6360-134 [P. C. § 2696-756], Laws of 1937, chapter 189, p. 918, § 134) for the operator of any vehicle involved in an accident resulting in injury to a person to fail to stop and render aid to the injured person after the accident. The defendant was found guilty, by the verdict of a jury, of that crime. From the judgment and sentence pronounced against him on the verdict, the defendant appealed.

The only question presented by the appeal is whether the evidence, which was wholly circumstantial, was sufficient to support the verdict.

We are satisfied that there was enough evidence, which is summarized as follows, to carry the case to the jury, whose province it was to say whether the case so made was overcome by the evidence given in behalf of the appellant:

On February 10, 1938, about 3:45 p. m., George Sevilles was found unconscious lying approximately six feet up the driveway of the home of a Mr. England, on the north side of a concrete highway in King county which runs west from Enumclaw to Auburn. About one and one-half miles west of Enumclaw is the "Wishbone Inn." About five or six hundred feet west of that tavern there is an upgrade on the highway, at which point the highway proceeds through a cut about twenty feet high and eighty feet long. At right angles from the highway at this point an upgrade driveway on which George Sevilles was found leads to the home of a Mr. England. A similar driveway leads to the home of a Mr. Henniger, about three or four hundred feet to the south of the highway.

No one was available as an eye-witness to the injury of Mr. Sevilles. The victim, who never subsequent to the injury became mentally normal, was, of course, unable to testify; the physician, who examined Sevilles,

testified that Sevilles had a ragged cut over the right side of his forehead and over the right side of the eye and a contusion and swelling of the back of his left hand. There was, also, a contusion and swelling between the heel and the knee in the back of his left leg. The physician testified that the injuries sustained by Sevilles could have been caused by an automobile.

On the date in question, Gladstone Toman and Henry Belleck were engaged in the automobile wrecking business at Enumclaw. Appellant, who resides outside of Enumclaw, was acquainted with the two members of that firm and occasionally visited their place of business. On February 10th, one Campbell brought his truck to Toman's garage for repairs, but he became so intoxicated during the day that Toman's partner, Belleck, arranged to drive Campbell home in the truck some time prior to four p. m. In order that Belleck might return to Enumclaw, Toman requested appellant to take Toman's 1936 Ford V-8 de luxe sedan and follow the truck to Campbell's home, which was at Handy Corner, about four or five miles west of Enumclaw on the highway leading to Auburn, and bring Belleck back in the sedan. Mr. Toman testified that appellant was not under the influence of liquor.

The truck proceeded west toward Auburn, and appellant in the Ford sedan followed it. Belleck testified that he was not acquainted with Sevilles, but that, on the way out in the truck, he passed a man walking on the north side of the highway near the Wishbone Inn, and as Belleck turned out to pass the man he saw two automobiles following the truck, one of which was a sedan operated by appellant. When the truck arrived about a mile and a half beyond the Wishbone Inn, Belleck stopped the truck to permit Weaver, who was riding with him, to alight, and appellant then drove around in front of the truck and waited for the truck

to proceed. The truck operated by Belleck and the sedan operated by appellant then proceeded to Handy Corner, where the operators stopped, went inside, had a glass of wine, and remained there about fifteen minutes. The appellant and Belleck then got into the sedan and proceeded toward Enumclaw, Belleck operating the sedan. Belleck further testified that nothing appeared unusual in the behavior of appellant, who did not seem to be excited or nervous.

When Belleck and appellant arrived at the cut in the road at the England driveway, people were congregated around a man lying in the driveway. They did not stop, but went on to Enumclaw, where they arrived between four-thirty and five o'clock in the afternoon. Appellant met his father in Enumclaw, and these two got into their automobile and started home over the Auburn highway. When appellant again arrived at the England driveway, the body of Sevilles was then in the highway patrol wagon on the way to the hospital.

Appellant testified that at no time did his automobile come into contact with the body of any person whatsoever.

Miss Dorothy Henniger, who was looking out of the window of her home, which was approximately one hundred and fifty feet from the highway, testified that she saw Sevilles walking along the highway in question, which man was later identified as Sevilles, and that she watched him walking along the highway until her vision was obstructed by a bank which hides some of the highway. After this man disappeared behind the bank, she saw a blue V-8 sedan, which she later identified as the car owned by Toman, pass and enter the cut; that, as it went through the cut, she saw something which she described as a puff of smoke or dust go up into the air while the car was in the cut. She then

observed the car coming out through the cut. She testified that she saw another car (this was the car of a Mr. Steiner, who picked up the victim) drive up and stop in the cut, whereupon she went out and found Mr. Sevilles lying about six feet off of the highway.

Another witness testified that, on or about the time that the accident happened, he was driving along the highway, and that a car, similar to the one that it was admitted that the appellant was driving that day, almost ran into him. The operator of the offending automobile was wearing a blue blazer and a brown or grey hat and resembled the appellant. There was other testimony to the effect that the appellant was wearing a blue blazer and a brown hat on the day of the accident.

There was further testimony that the automobile operated by appellant was taken to a garage at eight o'clock the morning following the accident, and that the right front fender had a large dent in it about fifteen inches long on the crown of the fender and was marked on the side. There was also a slight dent on the right side of the grill of the car. The automobile operated by appellant was followed by an automobile operated by witness Steiner, who discovered the injured man and picked him up. There is testimony that the damage to the fender was result of an accident prior to the one in which it is charged that appellant was implicated.

█ True, the evidence is purely circumstantial; however, to warrant a conviction thereon,

" . . . it is not essential that no inference or presumption shall be indulged in by the jury that does not in their minds necessarily arise from the circumstances proved. Although circumstantial or presumptive evidence is allowed to prevail, even to the convicting of an offender, still the circumstances must themselves be proved and not presumed. While the evidence must

lead to the conclusion so clearly and strongly, where the evidence is purely circumstantial, as to exclude every reasonable hypothesis consistent with innocence, still, it is not necessary that the evidence should produce absolute certainty in the minds of the jurors, or that it should dissipate mere conjectures and speculative doubts,—for metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if the evidence produce moral certainty, to the exclusion of every reasonable doubt." 8 R. C. L. 226, 227.

Whether circumstantial evidence tending to connect appellant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of appellant's guilt, was a question for the jury, and not for the court.

"The weight of the evidence, whether direct or circumstantial, is a matter for the jury. When the evidence is of the latter kind, it is for the jury to say whether it excludes every reasonable hypothesis consistent with the innocence of the accused. That it may not be so convincing to us, or may be hard to reconcile in some of its aspects, or may appear in some of its features to refute or negative guilt, or to cast doubt thereon, will not justify the court in setting aside the verdict of the jury." *Allen v. State*, 26 Ariz. 317, 323, 225 Pac. 332.

Counsel for appellant argues that no evidence was adduced that Sevilles was injured by any vehicle. The testimony of the examining physician was that the injuries sustained by Sevilles could have been caused by collision with an automobile. In addition, there is proof that the automobile operated by appellant followed Sevilles into the cut on the highway immediately after Sevilles entered the cut. A cloud of dust went up while the car and the victim were both in the cut. That automobile drove out of that cut in the highway and the pedestrian shortly thereafter was found about

six feet off the highway suffering from the injuries above described.

No further review of the state's evidence, the truth of which the verdict reflects the jury accepted as true, is necessary. Under the circumstances proved, the jury was warranted in finding the appellant guilty as charged.

The judgment is affirmed.

BLAKE, C. J., MAIN, GERAGHTY, and SIMPSON, JJ., concur.