[No. 32930.    Department One.    May 12, 1955.]

THE STATE OF WASHINGTON, *Appellant*, v. B. A. KELLY *et al.*,
*Respondents.*[1]

*Charles O. Carroll* and *Laurence D. Regal* (*The Attorney General* and *Fred C. Dorsey, Assistant,* of counsel), for appellant.

*Cornelius C. Chavelle* and *Charles C. Ralls*, for respondents.

[1]Reported in 283 P. (2d) 684.

SCHWELLENBACH, J.—The 908 Club is an establishment located at 908 Twelfth avenue, in Seattle. It opens after midnight in order to accommodate patrons (as was so pertinently explained by Mr. Chavelle to the trial court, in the absence of the jury) "after the legitimate places, or the licensed premises" have closed for the evening. The admittance fee is one dollar per person. It has an orchestra and a small dance floor. It serves food and "mixers" for patrons who bring their own bottles. It employs a doorman, a hostess, a cook and helper, and waitresses.

The enforcement officers' branch of the Washington state liquor control board planned to raid the 908 Club at one o'clock the morning of November 22, 1953. The evening before, four officers met at the office of the chief enforcement officer, where they were briefed. Each was given a bottle of liquor from the state supply. Each officer and his wife or escort arrived (each couple separately) at the club about 12:15 a. m., paid the admittance fee, and were ushered to booths. Each officer ordered "mixers" for which he paid thirty-five cents apiece, poured liquor from the bottle which he had brought into glasses containing "mixers," and he and his wife or escort consumed the drinks. There were between seventy and a hundred patrons present. The officers saw bottles on several of the tables and saw waitresses serving "mixers" to the patrons.

At one o'clock, five additional enforcement officers arrived with a search warrant, and the raid took place. The defendants (with the exception of Kelly, who was not present) were placed under arrest. The officers took the names and addresses of the patrons and confiscated from them two bottles of Seagram's 7 Crown, two bottles of Seagram's V. O. Canadian Whiskey, two bottles of Early Times, three bottles of Old Hickory, a bottle of Jim Beam, Canadian Club, Vodka, Three Star Vodka, McNaughton's Sloe Gin, Calvert, Black & White, and Teacher's Highland Cream.

The information charged each of the nine defendants, in nineteen separate counts, with aiding and abetting nineteen different persons to consume liquor in a public place. In

other words, there were 171 criminal acts charged. A different person was named as the consumer in each of the nineteen counts. We quote Count I:

"I, CHARLES O. CARROLL, Prosecuting Attorney in and for the County of King, State of Washington, come now here in the name and by the authority of the State of Washington and by this Information do accuse B. A. KELLY, DICK RUFFIN, AL SMITH, CLAIR SMITH, RUTH MARKHAM, ROSALIE BRANDEL, NITA MOORE, CLAIR PELUS and JEAN PELUS, and each of them, of the crime of AIDING AND ABETTING THE CONSUMPTION OF LIQUOR IN A PUBLIC PLACE, committed as follows:

"They, the said B. A. KELLY, DICK RUFFIN, AL SMITH, CLAIR SMITH, RUTH MARKHAM, ROSALIE BRANDEL, NITA MOORE, CLAIR PELUS and JEAN PELUS, and each of them, in the County of King, State of Washington, on or about the 22nd day of November, 1953, wilfully and unlawfully did aid, abet, assist or not being present did, directly or indirectly, aid, abet, assist, counsel, encourage and advise one Merrit H. Nevers to consume liquor in a public place contrary to R. C. W. 66.44.100;

"Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington."

Each count was identical with the exception of the name of the person alleged to have been aided and abetted.

Seventeen patrons, other than enforcement officers, were called as witnesses by the state. To say the least, they were not co-operative. Instead of having consumed the customary two stubbies of beer, these witnesses testified that they were "fuzzy" as a result of having consumed so much hard liquor at other places before they arrived at the club. They remembered having been there, having brought liquor, having purchased "mixers," and remembered some of the employees, but practically all of them could not recall the particular waitress who had served them. As a result, the testimony of the four enforcement officers who had been sent there to obtain evidence was about all of the testimony which was of any benefit to the state.

At the close of the state's case, the defendants challenged the sufficiency of the evidence, and the trial court dismissed

the defendants B. A. Kelly, Dick Ruffin, Al Smith, Clair Smith, Ruth Markham, and Jean Pelus for lack of sufficient evidence to justify the submission of the question of their guilt or innocence to the jury. It dismissed all of the counts except counts 1, 7, 13, 14, 16, and 18. It submitted the question of the guilt or innocence of the defendant Nita Moore with respect to counts 1, 7, and 18, and dismissed the other counts against her; of defendant Rosalie Brandel with respect to counts 13 and 14 and dismissed the other counts; and of defendant Clair Pelus with respect to count 16 and dismissed the other counts. These defendants were found guilty by the jury, but do not appeal their convictions. The state appeals from the order of dismissal made by the trial court.

Section 34, chapter 62, Laws of Extraordinary Session, 1933, p. 193 [*cf.* RCW 66.44.100] provides:

"Except as permitted by this act, no person shall open the package containing liquor or consume liquor in a public place. Every person who violates any provision of this section shall be guilty of a misdemeanor, and on conviction therefor shall be fined not more than ten dollars ($10)."

Section 8, chapter 249, Laws of 1909, p. 892 [*cf.* RCW 9.01-.030] provides:

"Sec. 8. *Principal Defined.*
"Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

After the repeal of the eighteenth amendment, the legislature adopted chapter 62, *supra*, known as the Washington state liquor act. It was a comprehensive act

consisting of ninety-five sections covering all phases of the control and regulation of the sale of intoxicating liquors. It provided penalties for violation of the various provisions of the act, consisting of fines up to three hundred dollars and imprisonment up to one year. It seems clear that § 34, *supra*, was aimed solely at those persons who should open a package containing liquor, or who should consume liquor, in a public place, and was not aimed at people operating establishments who violated the liquor act. However, it is a crime to aid or abet a person to commit a crime, and such aider or abettor may be prosecuted even though no charge is preferred against the person aided or abetted.

The theory of the state is that each defendant aided and abetted each of the nineteen persons named in the nineteen counts, to consume liquor in a public place. The trial court submitted to the jury only those issues where there was a sufficient showing that certain waitresses served "mixers" to certain named patrons.

Defendant Kelly was not present at the time of the raid. Apparently he was ill and was out of the city. There was testimony which tended to connect him with the ownership of the establishment. One enforcement officer testified as to conversations with Kelly, during the preceding June and July, which indicated that he was a part owner at that time. At the time of the raid, there was found on the premises a contract with the Musicians' Union, signed "B. A. Kelly"; a promissory note payable to B. A. Kelly; two checks made out to the tax commission, signed by B. A. Kelly; and a copy of a conditional sales contract covering equipment sold to B. A. Kelly and Dick Ruffin. Photostatic copies of these instruments were admitted in place of the originals. Objections were made to their introduction on the grounds of improper identification and not the best evidence. The trial court admitted them, but stated that it would rule on the objections later. This was not done.

These exhibits were all dated approximately a month before the raid. They would tend to prove that Kelly was the owner on October 20th. This evidence is not inconsist-

ent with any hypothesis or theory which would tend to establish his innocence. *State v. Gillingham*, 33 Wn. (2d) 847, 207 P. (2d) 737. On the evidence submitted, the jury would have been compelled to speculate on whether or not he was the owner at the time of the raid. The state failed to produce sufficient evidence to submit the question of Kelly's guilt or innocence to the jury.

We now come to the remaining defendants, all of whom, as the employees of the establishment, were present at the time the drinking occurred.

In *State v. Peasley*, 80 Wash. 99, 141 Pac. 316, the appellant, who was tried alone, had been charged with two others with the crime of grand larceny. The court instructed the jury that, if the money was taken with his aid *or assent*, he would be just as guilty as though he himself had taken it. In granting a new trial, after quoting the statute, we said:

"Each of the words used in this statute upon which a criminal charge can be predicated signifies some form of overt act; the doing or saying of something that either directly or indirectly contributes to the criminal act; some form of demonstration that expresses affirmative action, and not mere approval or acquiescence, which is all that is implied in assent. To assent to an act implies neither contribution nor an expressed concurrence. It is merely a mental attitude which, however culpable from a moral standpoint, does not constitute a crime, since the law cannot reach opinion or sentiment however harmonious it may be with a criminal act."

We held in *State v. Klein*, 94 Wash. 212, 162 Pac. 52, that, where one with intent that another shall commit a crime and to incite him to commit it intentionally signifies to the other his assent, and the other, as a result of such incitement, does commit it, the first person aids and abets.

The statute provides, ". . . and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a . . . misdemeanor, is a principal." The doorkeepers, the hostess, and the waitresses who did not actually serve "mixers" to the particular individuals named in the various

counts may have been ready, willing, and able to assist those individuals to consume liquor in a public place, but did they aid and abet them in doing so? As to count I, did they, directly or indirectly, counsel, encourage, hire, command, induce, or otherwise procure Merrit H. Nevers to commit the crime of consuming liquor in a public place? True, they must have been aware of what he was doing; but they, being merely employees, were not legally bound to prevent him from breaking the provisions of § 34, *supra*. According to the evidence, each one of them may individually have been aiding and abetting the other ninety and nine patrons to violate the law, but they did not aid and abet Merrit H. Nevers to do so. The same applies as to each of the nineteen counts.

The order of dismissal appealed from is affirmed.

HAMLEY, C. J., DONWORTH, and ROSELLINI, JJ., concur.

FINLEY, J. (dissenting in part)—There is no question that the state's evidence was circumstantial as to Mr. Kelly's ownership and operation of the speak-easy. The majority opinion indicates this evidence was such that the jury would have to speculate as to whether Mr. Kelly was the owner and manager after October 20th; that is, at the time of the raid on November 21st. On this hypothesis, the conclusion is reached that the dismissal as to Mr. Kelly was proper. I am considerably in doubt as to the propriety, that is, the soundness legally, of this conclusion. I am more inclined to the view that the evidence, although circumstantial, was sufficient to take the case to the jury, and was sufficient to support a reasonable inference, or an inference to the degree of a moral certainty, on the part of the jury that Mr. Kelly was the owner and manager on November 21st. In other words, I think that the evidence was sufficient to present a question for the jury, and that the trial court was not justified in dismissing as to defendant Kelly at the end of the state's case. See *State v. Donckers*, 200 Wash. 45, 93 P. (2d) 355. In the *Donckers* case, we quoted with approval from 8 R.C.L. 226, 227, as follows:

" 'It is not essential that no inference or presumption shall be indulged in by the jury that does not in their minds necessarily arise from the circumstances proved. Although circumstantial or presumptive evidence is allowed to prevail, even to the convicting of an offender, still the circumstances must themselves be proved and not presumed. While the evidence must lead to the conclusion so clearly and strongly, where the evidence is purely circumstantial, as to exclude every reasonable hypothesis consistent with innocence, still, *it is not necessary that the evidence should produce absolute certainty in the minds of the jurors, or that it should dissipate mere conjectures and speculative doubts,—for metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if the evidence produce moral certainty, to the exclusion of every reasonable doubt.*' " (Italics mine.)

Furthermore, in the *Donckers* case, we quoted with approval from *Allen v. State*, 26 Ariz. 317, 323, 225 Pac. 332, as follows:

" 'The weight of the evidence, whether direct or circumstantial, is a matter for the jury. *When the evidence is of the latter kind, it is for the jury to say whether it excludes every reasonable hypothesis consistent with the innocence of the accused. That it may not be so convincing to us, or may be hard to reconcile in some of its aspects, or may appear in some of its features to refute or negative guilt, or to cast doubt thereon, will not justify the court in setting aside the verdict of the jury.*' " (Italics mine.)

Considering the foregoing views, I am convinced that the action of the trial court in dismissing as to defendant Kelly should be reversed. Otherwise, I am in agreement with the results reached in the majority opinion.