[No. 35418.   Department Two.   June 29, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. VINCENT CHARLES JAMES, *et al., Appellants.**

*Murray B. Guterson,* for appellants.

*Charles O. Carroll* and *James D. Burns,* for respondent.

*Reported in 363 P. (2d) 116.

DONWORTH, J.—Appellants, Vincent Charles James and his wife, Lois Tucker James, appeal from a conviction of five counts of grand larceny.[1] The sum and substance of the charges as set forth in the information and amplified in the bill of particulars were that they obtained money through false and fraudulent representations of fact.[2]

The pertinent, undisputed facts of the case are essentially the following:

Appellant Vincent James owned and operated the Seattle franchise of the Patricia Stevens Finishing School. His wife actively participated with him in supervising the operation of the school. The parties also operated a similar franchise of the same school in Portland, Oregon. The school was run for profit and offered such courses as speech, modeling, and self-improvement. A number of students at both the Seattle and Portland branches testified that they were induced to enroll in (and pay for) additional courses (other than those for which they originally signed up) by representations made by employees of the school to the effect that the school had an exclusive contract to supply models for the Oregon Centennial held in Portland in the summer of 1959. These representations were made in February, March, and April of 1959. The complaining witnesses testified that they were assured of lucrative modeling employment at the Centennial upon completion of the additional courses. While the school had rented booth space at the Centennial, no contract to supply models ever existed.

---

[1] One Joan Eldridge, the manager of the Seattle school from March 9, 1957, through May 16, 1959, was also joined as a defendant but was found not guilty.

[2] The criminal statute involved is RCW 9.54.010, which provides, in part, that: "Every person who, with intent to deprive or defraud the owner thereof—

" . . .

"(2) Shall obtain from the owner or another the possession of or title to any property, real or personal . . . by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick device, bunco game . . .

"Steals such property and shall be guilty of larceny."

It is to be noted that the representations complained of were not made by appellants, personally. As has been stated, the representations regarding the Centennial were made by certain employees of the school.

There is but one assignment of error raised by appellants, to wit, the failure of the trial court to sustain appellants' motion to dismiss for lack of sufficient proof of either (1) intent to defraud, or (2) authorization of the false statements. The entire question on appeal then is whether or not there was sufficient evidence presented to warrant the finding by the trier of fact[3] that appellants intended and authorized their employees to make the representations complained of.

The state questions the adequacy of this assignment as a challenge to the findings of fact entered by the trial court, citing *State v. Mercy,* 55 Wn. (2d) 530, 348 P. (2d) 978 (1960), which involved a conviction on three counts charging petit larceny. The information was based on the same statute (RCW 9.54.010(2)), and the defendant waived a jury trial. No error was assigned to the trial court's findings. This court held that under such circumstances the findings became the established facts of the case.

Assuming that the single assignment of error in this case is sufficient to challenge the trial court's findings of fact under Rule on Appeal 43 (RCW Vol. 0), there admittedly has been no compliance with the following portion of Rule on Appeal 42(a)(7):

". . . Whenever error is assigned to any finding or findings of fact, so much of the finding or findings made or refused as is claimed to be erroneous shall be set out verbatim in the brief and reference made thereto by number in the 'assignments of error.' "

Concerning this contention of respondent, appellants comment in their reply brief as follows:

"Secondly, and much more importantly, appellants' assignment of error . . . does meet the requirements, in spirit and in logic, of Rule . . . [42(a)(7)] and Rule

---

[3] A jury trial was waived and the case was tried to the court alone.

43, Rules on Appeal. Why were these rules promulgated but to call for clarity and succinctness in brief preparation so that this Court and opposing parties would immediately comprehend the point or points in issue? In this case, there is only one point in issue, namely, under the recognized requirements of proof in criminal cases, does the evidence support the result. This is the substance of our one and only assignment. Certainly we might have made seven other assignments by decrying the language of Findings of Fact VI, VII, VIII(E), IX(E), X(E), XI(E) and XII(E), but then still under Rule . . . [42(a)(7)], Rules on Appeal, we would have argued our exact same one and only proposition under one heading.

"And, had we chosen the latter course, how much more likely would have been the opportunity for confusion, for respondent to misinterpret and to seek to meet a claim not even being made. No, we cannot believe that the form and language of our single assignment, so simple and direct, can now be construed as an irresponsible or abortive method of bringing to this Court the very substantial point we urge."

■ We think that appellants mistake the purpose of the above-quoted portion of Rule 42. The reason for requiring the challenged portion of the trial court's findings to be set out verbatim in the brief is to enable each judge to become informed as to precisely what is before the court. In order to determine whether a particular finding is or is not supported by substantial evidence, each judge must have this precise information before him. Without the challenged findings being set out in the appellant's brief, each judge would be compelled to search the transcript on file in the clerk's office to find out what factual disputes are involved in each particular case. The rule is a practical one designed to facilitate the disposition of cases by this court by eliminating such a cumbersome procedure.

In view of appellants' misunderstanding of the purpose of Rule 42(a)(7), and the fact that they have been sentenced to penal confinement for a substantial period, we have examined the statement of facts (667 pages) and exhibits and have considered the sufficiency of the evidence as to the two points mentioned in appellants' single assignment of error.

■ The evidence tending to link appellants to the crime is, to some extent, circumstantial. As this court said in *State v. Gillingham*, 33 Wn. (2d) 847, 854, 207 P. (2d) 737 (1949):

" . . . in order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence."

See, also, *State v. Charley*, 48 Wn. (2d) 126, 291 P. (2d) 673 (1955); *State v. Taylor*, 47 Wn. (2d) 213, 287 P. (2d) 298 (1955); and *State v. Long*, 44 Wn. (2d) 255, 266 P. (2d) 797 (1954). However, it has also been held with equal unanimity that the question of whether or not the circumstantial evidence tending to link a defendant with the crime excludes beyond a reasonable doubt every reasonable hypothesis other than the defendant's guilt, is a question for the trier of fact (in this case the trial court). See *State v. Walters*, 56 Wn. (2d) 79, 351 P. (2d) 147 (1960); *State v. Lewis*, 55 Wn. (2d) 665, 349 P. (2d) 438 (1960); *State v. Grenz*, 26 Wn. (2d) 764, 175 P. (2d) 633 (1946), appeal dismissed 332 U. S. 748, 92 L. Ed. 336, 68 S. Ct. 54; and *State v. Donckers*, 200 Wash. 45, 93 P. (2d) 355 (1939).

It is neither our function nor our purpose to catalogue all of the evidence upon which the trier of fact might have based its finding of guilt. However, summarized below is some of the principal evidence tending to link appellants with the crime charged.

1. Edward Piel, who was employed by Vincent James as an "interviewer" and "counselor" at the Portland branch, testified, in part, as follows:

"Q. I see. Now what did he [Vincent James] say about the Oregon Centennial? A. He said that 'the girls we are accepting for modelling at this time would definitely be placed at the Centennial for a minimum of 25 to 50 dollars a day.' . . . Q. (By Mr. Burns) All right, did Mrs. Tucker ever come into the conversation? A. Yes, just once. Q. Where was that now, and when was it? A. Well, that was while

we were in one of the interviewing rooms, talking over the Centennial; and Mrs. James said, came in and said, 'That is definitely true; we do need girls. We are getting more calls now than we have qualified girls to fill.' Q. Now did Mr. James tell you to say anything to these girls, prospective students? A. I was told that if I found a girl who was interested, it would be all right to go ahead and say this. Q. Say what? A. That we would be able to place them at 25 to 50 dollars a day. Q. Where? A. At the Centennial."

2. During cross-examination by the state, codefendant, Lois Tucker James, testified, in part, as follows:

"Q. (By Mr. Burns) You [Lois Tucker James] said that you would look through the windows at the studio? A. Yes, Q. And also in the place, there was microphones somewhere in the place? A. In each counseling office there was a microphone which led to a monitor in an office adjacent to the telephone room. Q. I see. Is that so that someone—yourself or your husband—could go in there and listen to see what they were telling to the counsellees? A. That was the original purpose, Mr. Burns. Q. I see. Was there another purpose involved also? A. No, but when my husband and I were not in the Seattle school it was the manager's duty to do this. Q. And was that the same in Portland? You had the same kind of a setup? A. We had a monitoring service, yes. Q. You would listen in on what they were telling the students? A. Yes—prospective students. Q. And was that so that you would know what was going on there in your company? A. Yes."

3. Patricia Anne Herman, another one-time employee at the Portland branch, testified regarding the monitoring system as follows:

"Q. And was there any mention made, during this transaction that failed, about Portland? A. When Mr. Williams went in. Q. When Mr. Williams went in? A. Yes. Q. You heard it? A. Yes, sir. Q. Over the monitoring system? A. That's right. Q. And Mr. James was there? A. At the time."[4]

Certain of the essential findings of the trial court are set forth below.

---

[4] The "Mr. Williams" referred to was a former managerial employee of the Seattle school, who was apparently unavailable to testify for either side.

"II.   That during the months of February, March and April of 1959 instructors, counselors and managers at the Seattle Patricia Stevens School . . . represented to students and prospective students at the said school that the Patricia Stevens school had an exclusive contract with the Portland, Oregon Centennial Exposition to provide a number of models for the Centennial Exposition, which was to commence in June, 1959 for a duration of one hundred days; also, that if these students or prospective students signed up for a special course with the Patricia Stevens school they would be able to qualify for work at the Centennial Exposition;

"III.   That during the months of February, March and April of 1959 similar representations were made to students and prospective students at the Portland Branch Patricia Stevens Finishing School owned by Vincent Charles James and operated by Vincent Charles James and his wife, Lois Tucker James;

"IV.   That neither the Patricia Stevens school nor its owners and operators had a contract, exclusive or otherwise, with the Portland, Oregon Centennial Exposition to provide models or anyone for the Centennial Exposition, and that neither the Patricia Stevens school nor its owners and operators had a contract with anyone to provide models for the Portland, Oregon Centennial Exposition, and that no student at the Seattle Patricia Stevens school ever was placed at the Portland, Oregon Centennial Exposition by the Patricia Stevens Finishing School or its owners, Vincent Charles James and Lois Tucker James;

"V.   That the representations of the aforesaid exclusive contract made by employees of the Patricia Stevens Finishing School were false and fraudulent representations of a material existing fact;

"VI.   That Vincent Charles James and Lois Tucker James encouraged the use of these false representations and that these were part of a deliberate scheme and device developed and employed by Vincent Charles James and Lois Tucker James in the Seattle and Portland Patricia Stevens schools calculated to trick and defraud students and prospective students at the Patricia Stevens school;"

That the trial court, in making the foregoing findings of fact, was well aware of the rule to be followed by the trier of the fact in a criminal case is shown by the following portion of its oral decision at the close of the evidence:

"Now this is a criminal case. The proof has to be not by a preponderance of the evidence, but beyond a reasonable doubt—which, for practical purposes, means the Court has to be convinced to a moral certainty not only that the false representations were made and that there was reliance upon them, but I've got to find that there was knowledge on the part of the defendants that such representations were being made, and that finding must be made with respect to each defendant separately if there is going to be any conviction of that defendant."

At the trial, appellants of course sought to establish the hypothesis that the representations made by their employees regarding the nonexistent contract to supply models for the Portland Centennial were the products of their over-zealous sales personnel and were made without appellants' knowledge. However, in light of the testimony cited above, we can find no substance to appellants' contention. The monitoring system itself, coupled with the testimony of Mr. Piel and other employees that both appellants had on occasion affirmatively represented the existence of the modeling contract, sufficed to establish a question for the trier of fact. The only reasonable inference to be gathered from all of the evidence is that appellants intended the representations to be made and either expressly or implicitly authorized them.

We deem it appropriate to state that at the trial appellants were represented by counsel other than the counsel representing them on this appeal.

The judgment and sentence of the trial court is affirmed.

FINLEY, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

---

September 13, 1961. Petition for rehearing denied.