[Nos. 35409, 35410.   Department One.   December 14, 1961.]

CARL TEEL, *Appellant*, v. O. K. SILER *et al., Respondents.*

CARL TEEL, *Appellant*, v. ARNE LUND *et al., Respondents.**

*Merrill Wallace*, for appellant.

*Arthur & Hanley*, for respondents.

HILL, J.—We are again asked to overturn findings of fact and substitute the appellant's proposed findings.

■    The appellant's proposed findings cannot be considered, as they are not set out verbatim, or at all, in his brief, as required by Rules on Appeal 42(a)(7) and 43. *State v. James* (1961), 58 Wn. (2d) 383, 363 P. (2d) 116; *Ennis v. Ring* (1959), 56 Wn. (2d) 465, 472, 341 P. (2d) 885, 353 P. (2d) 950; *Scroggin v. Worthy* (1957), 51 Wn. (2d) 119, 124, 316 P. (2d) 480.

*Reported in 367 P. (2d) 15.

Before we consider the trial court's findings, which the appellant asserts are not supported by the evidence, certain factual background must be filled in.

The O. K. Silers and the Arne Lunds owned adjacent beach properties with a combined water frontage of 245 feet.

The adjoining property owners had bulkheads in front of their property, and Teel, the appellant here, contracted with the Silers and the Lunds

" . . . to install 286 Cu Yds of riprap on Lund & Siler property on Erlands pt to extend 245 ft between the Roy Thompson Bulkhead & Siler[1] Bulkhead the riprap shall be one ft higher than the Thompson Bulkhead now in place. Total cont. price to be $2000.00, Two Thousand & no/100 all dozer wk to be by the hr @ 13.00 plus 25 move in, except the actual placing of Rock."

The 286 cubic yards of rock were distributed along the entire 245 feet beach frontage, with the intention of later moving it into position for the riprap-retaining wall or bulkhead.

Though disputed in some details, there is substantial evidence to support the following statements: Teel, at the time the foregoing contract was entered into, was doing some dirt moving on the Lund property; dirt from the Lund property was thereafter placed on the beach by the Teel bulldozer operators (on the landward side of the rock), and this dirt, as a result of tidal action, ultimately and substantially covered the rock placed in front of the Lund property and made it impossible to use it for riprap; and the contract to install the 245 feet of riprap between the existing bulkheads on the adjoining properties was never performed.

After it became apparent that the 245 feet of riprap bulkhead could not be built because of the inability to use the rock which had been placed on the Lund property, Teel—on Siler's instructions—used his bulldozer to move the

---

[1]The Silers owned property which already had a bulkhead and which was adjacent to the Siler property included in the 245 feet of beach property without a bulkhead, with which we are here concerned.

rock in front of the Siler property several feet in toward the bank, where it remained[2].

While there were controversies over charges by Teel against the Lunds and Silers, for services apart from the contract to install 245 feet of riprap bulkhead for $2,000, the trial court's finding on these items is not now contested. If Teel has failed and refused to perform his contract, with reference to the riprap bulkhead, he has been overpaid $731.30 by the Lunds[3] and $988.57 by the Silers[4]. (The judgments of the trial court were against Teel in favor of Lund in the sum of $877.67, and in favor of Siler in the sum of $988.57. The variation between $731.30 and $873.67 in the Lund judgment is explained in note 3.)

It is Teel's position that he has performed fully as to the Silers, having pushed the rock into a position designated by Siler and he (Teel) is entitled to recover for 123 feet of riprap bulkhead at $8.16 per lineal foot, or $1,003.68, or $15.11 in excess of the amount ($988.57) which the trial court's findings show he has been paid by the Silers over

---

[2]This was a service performed at Siler's request, and the Silers might well have been liable therefor had Teel made a claim for additional bulldozer work performed after the contract had been abandoned.

[3]Teel had received from Lunds a total of $1,701.54 in cash and merchandise credit, and had performed bulldozing and blasting services for the Lunds in the development of their property of the value of $970.24, leaving an overpayment of $731.30, which would have been applicable to the amount due on the riprap-bulkhead contract had it been performed. This we believe to be the only amount to which the Lunds were entitled on the theory of overpayment.

Teel, on the theory that he was entitled to $2,000 for the performance of the contract, conceded a credit of $1.00 a cubic yard for the moving of 142.37 cubic feet of rock on the Lund beach into its permanent position, which he admittedly did not do. This credit was added to the $731.30 to make the figure of $873.67 allowed by the trial judge. This would be a proper credit if Teel were recovering a judgment from Lund, but it seems to us to have no bearing on a recovery by Lund of his overpayment.

[4]Teel had received from the Silers a merchandise credit of $1,033.79; had performed yarding of felled trees and blasting services for Silers in the development of their property of the value of $45.22, leaving an overpayment of $988.57, which would have been applicable to the amount due on the riprap-bulkhead contract, had it been performed.

and above the amounts due him for yarding felled trees and blasting.

It is, further, Teel's position that Lund's actions prevented his completion of performance of the contract; that, except for the actual pushing of the rock into place, he had done all that he contracted to do; and that he is, therefore, entitled to recover from Lund for 122 feet of riprap bulkhead at $8.16 per lineal foot. This would amount to $995.52, or $121.85 in excess of the amount ($873.67) which the trial court's findings show he has been paid by the Lunds, over and above the amount due him for bulldozing and blasting for them. The $873.67 includes an additional credit due the Lunds in the amount of $142.37 (see note 3).

■ The evidence amply supports the trial court's findings: That it was the dirt placed on the beach by Teel's bulldozer operators which, moved by tidal action, made it impossible to use the rock placed in front of the Lund property for the riprap bulkhead, and that he did nothing to save or salvage that rock. The inability to use this rock made it impossible for Teel to install a riprap bulkhead, as he had contracted to do, by extending it "245 ft between the Roy Thompson Bulkhead & Siler Bulkhead" in front of the Siler and Lund properties (unless, of course, he brought in additional rock, which he never offered to do).

The trial court's findings support a judgment against Teel for the overpayments made to him by the Lunds and Silers. Teel, in order to at least establish a claim against the Silers, seeks to break the two-thousand-dollar contract for 245 feet of riprap bulkhead between existing bulkheads into two contracts—one with Siler for 123 feet at $8.16 per lineal foot of riprap bulkhead, or $1,003.68, and one with Lund for 122 feet of riprap bulkhead at $8.16 per lineal foot, or $995.52. (The figure of $8.16 per lineal foot is apparently arrived at by the simple device of dividing 245 (feet) into 2000 (dollars).) This theory of two separate contracts is untenable and completely without support in the testimony.

The evidence establishes a contract for a two-hundred-forty-five-foot bulkhead for $2,000, and that the failure of performance was attributable solely to Teel and his em-

ployees. Siler and Lund did not receive what they con-
tracted for, and they received no benefit from Teel's partial
performance. The trial court so found, and the evidence
supports the findings. Except for the erroneous inclusion
of the sum of $142.37 in the amount of the Lunds' judgment
against Teel, the judgments in favor of the Lunds and Silers
are affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.