[No. 40911.    En Banc.    January 28, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH
CERNY, III, *Appellant.**

*Reported in 480 P.2d 199.

846

*George W. Dixon* and *David L. Wolf*, for appellant (appointed counsel for appeal).

*Joseph Cerny, III*, pro se.

*Ronald L. Hendry, Joseph D. Mladinov*, and *Eugene G. Olson*, for respondent.

FINLEY, J.—On the evening of November 16, 1968, two men, masked with strips of adhesive or similar tape and armed with guns, entered and robbed the Lake City Shoprite. During the commission of the crime, one of the robbers shot, and fatally wounded, one George Washington Howard, a customer who attempted to thwart the robbery. Following the shooting, the robbers left the store and escaped by automobile. A witness pursuing the robbers in his automobile was fired upon twice. Although his attempts at cap-

ture were unsuccessful, the witness was able to obtain a description of the getaway vehicle and its license number.

Sometime after the robbery and on the same evening, one Michael Morris reported to the Tumwater Police Department that his automobile had been stolen from the parking lot of a Tumwater motel (located approximately 25 miles from the scene of the robbery). Morris' vehicle was found by police the following morning in the back of the parking lot of the Tumwater motel. The vehicle matched the pursuing witness' description of the getaway car; and, but for one letter, its license number coincided with the license of the robbers' vehicle as remembered by the witness.

Morris, his wife and appellant arrived upon the scene as the police were examining Morris' vehicle. Morris and the appellant were taken into custody and were later transported to the Pierce County jail. Shortly thereafter, following the appointment of counsel, they were subjected to a lineup attended by several customers and employees present in the store at the time of the robbery-murder. Appellant was positively identified by two witnesses in attendance at the lineup as being one of the two robbers.

Appellant was charged by amended information with the unlawful aiding and abetting of another person in the commission of a felony—i.e., a robbery—during which robbery mortal wounds were inflicted upon one George Washington Howard by the said other person. The state does not contend that the appellant fired the fatal shot. The jury found the appellant guilty and imposed the death penalty. He appeals this conviction and sentence of death entered upon the jury's verdict.

Appellant, through argument and briefs of counsel and personally through supplemental briefs, assigns seven errors to the trial court's determination. These assignments will be examined in order.

Appellant first assigns error to the admission, over appellant's repeated objections, of certain testimony concerning Michael Morris. Appellant contends that, since Morris was not charged with any crime arising from the robbery-murder, the introduction of such testimony denied appel-

lant a fair trial because (1) it required appellant to defend Morris as well as himself; and (2) the evidence so admitted was unrelated to the criminal acts charged and thus failed to meet the test for admissibility of circumstantial evidence set forth in *State v. James*, 58 Wn.2d 383, 363 P.2d 116 (1961).

██ Upon careful examination and review of the questioned testimony, we find no merit in appellant's contention. Appellant does not question the general rule that evidence of acts of a principal may be admitted in evidence against the person charged with aiding and abetting the commission of a crime. This is true even where the principal is not being tried, is not under arrest and is not present as a witness. *See* 2 Wharton's Criminal Evidence § 418 (12th ed. 1955).

Certain testimony admitted at trial, over appellant's objection, was elicited to establish the capacity of Morris' automobile to attain great rates of speed. Since other testimony clearly established the fact, if believed by the jury, that the appellant and Morris were together prior to, during and following the time of the commission of the robbery-murder, the speed capacity of Morris' vehicle was relevant to establish the ability of Morris and appellant to travel from Olympia to the Lake City Shoprite and back to Tumwater within a short period of time. The evidence, in short, if believed by the jury, was relevant to placing appellant at the location of the crime when committed.

██ ██ Appellant further objects to testimony elicited to prove that Morris had registered at various motels in the Olympia area under his own name and under the name of Mike Katz. If believed by the jury, this evidence was relevant to establishing the planning of an escape route following the planned robbery. The record contains no evidence that the appellant in fact used any of these motels following the time of the robbery-murder. Contrawise, appellant's testimony in explanation of these various motel registrations would establish, if believed by the jury, an innocent explanation. Thus, the appellant argues that this evidence violates the test established in *State v. James*,

58 Wn.2d 383, 387, 363 P.2d 116 (1961), wherein this court, quoting from *State v. Gillingham*, 33 Wn.2d 847, 854, 207 P.2d 737 (1949), stated:

". . . in order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence."

The *James* test was not violated in the instant case, however, for

it has also been held with equal unanimity that the question of whether or not the circumstantial evidence tending to link a defendant with the crime excludes beyond a reasonable doubt every reasonable hypothesis other than the defendant's guilt, is a question for the trier of fact . . . See *State v. Walters*, 56 Wn. (2d) 79, 351 P. (2d) 147 (1960); *State v. Lewis*, 55 Wn. (2d) 665, 349 P. (2d) 438 (1960); *State v. Grenz*, 26 Wn. (2d) 764, 175 P. (2d) 633 (1946), appeal dismissed 332 U. S. 748, 92 L. Ed. 336, 68 S. Ct. 54; and *State v. Donckers*, 200 Wash. 45, 93 P. (2d) 355 (1939).

*State v. James, supra,* at 387.

The relevancy of this evidence concerning the activities of Morris and the appellant was a question for the determination of the trial court. Upon analogous facts, we have stated:

The defendant next contends that it was error for the trial court to admit over objection testimony concerning the unidentified man who accompanied the defendant on the day of the alleged crimes. He argues that this tended to confuse the jury about the defendant's identity. We disagree. Several witnesses made positive identifications of the defendant in court, so there was no real doubt as to his identity. Moreover, the relevancy of testimony concerning the "other man" was a matter within the discretion of the trial court, *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959), and in this case, it is obvious that such testimony helped to explain the circumstances under which the alleged criminal acts took place. We find no abuse of discretion by the trial court in admitting the testimony.

*State v. Schrager*, 74 Wn.2d 75, 79-80, 442 P.2d 1004 (1968). The jury was adequately instructed upon the nature and weight to be afforded circumstantial evidence. Instruction No. 17 provided in part:

The facts and circumstances relied upon should be consistent with each other, and with the guilt of the defendant. They should be inconsistent with any reasonable theory of innocence. They should be of such character as to exclude every reasonable hypothesis other than that of guilt. Circumstantial evidence meeting these requirements is entitled to the same weight as direct evidence.

We must presume, absent any contrary showing, that the jury followed the court's instruction. *State v. Willis*, 67 Wn.2d 681, 409 P.2d 669 (1966).

Lastly, appellant objects to the state's attempt to place before the jury the allegedly poor financial condition of Morris. The record does not support the appellant's contention. His objections to two immediately successive questions by the state on this matter were sustained and the witness made no response to them.

■ Appellant next assigns error to what he characterizes as inflammatory and highly prejudicial remarks by the prosecuting attorney calling for imposition of the death penalty in the prosecutor's rebuttal argument. The appellant lays great stress upon his strategy to remain silent on the question of the death penalty. Thus, he contends, the prosecutor's reference to the death penalty unfairly inserted the issue into the case. We cannot agree with this contention. The question of the death penalty is inevitably before the jury in capital cases *regardless of defense strategy*. In the instant case, the jurors were extensively questioned upon voir dire regarding their beliefs as to imposition of the death penalty. Further, the jury was instructed in instruction No. 22, as required by RCW 9.48.030, as follows:

If, from all the evidence in this case, you should find the defendant guilty of murder in the first degree, the law then imposes the further duty upon you to find a

special verdict as to whether or not the death penalty shall be inflicted.

The form of such special verdict is therefore submitted to you in the form of this question, to be answered only in case you find the defendant guilty of Murder in the First Degree:

"Shall the death penalty be imposed?"

This you will answer yes, or no, according to your determination.

Thus, our inquiry must be directed toward ascertaining whether the prosecutor's references to the death penalty influenced the jury and tainted its verdict, and not whether these references interjected the question of the death penalty into the trial. We are convinced that the prosecutor's remarks directed toward the death penalty produced no error. A thorough examination of the record discloses that the prosecutor's remarks, while referring to the death penalty, cannot be characterized as an impassioned plea for its imposition. Further, appellant's objection to the prosecutor's reference to the death penalty in his rebuttal argument was sustained by the court.

Appellant strongly objects to what he characterizes as the unfairness of the prosecuting attorney's reference to the death penalty as coming in the state's closing summation, at which point the appellant had no chance to respond. However, the record does not support this contention. The prosecuting attorney, in his *opening* summation, made clear reference to the death penalty. The appellant, had he so chosen, could have responded to this reference in his own summation.

■ Appellant's third assignment of error is directed against the state's use of lineup photographs to secure further identification of the appellant by exhibiting these photographs to witnesses at times and places unknown to the appellant and outside the presence of appellant's counsel. Appellant contends that this practice denied his right to counsel at a critical stage in violation of *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967) (requiring that the accused have counsel present at any

lineup where he is to be displayed for identification purposes); *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967); and *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967).

Upon careful examination of these cases—the so-called "lineup trilogy"—we are convinced that their thrust is to focus upon abuses inherent in lineup identification proceedings; and, thus, these cases have no application to the situation presented in the instant appeal. The reasoning behind *Wade* centers upon the likelihood of unfairness to the unrepresented accused at the lineup (1) because of the manner in which *confrontations for identification* are frequently conducted, (2) because of dangers inherent in eyewitness identification and suggestibility inherent in the context of the confrontations, and (3) because of the likelihood that the accused will be precluded from reconstructing what occurred and thereby obtaining a full hearing on the identification issue at trial. The specific facts of *Wade* utilized by the court in illustrating the potential for improper influences on witnesses at the lineup proceeding are significant: therein lineup witnesses were allowed to see the accused in the custody of FBI agents before commencement of the lineup.

The facts of the instant case, when measured against the *Wade* rationale, clearly demonstrate that the appellant's right to counsel was not denied at a critical stage. Counsel for appellant was appointed prior to the holding of the lineup. There is no dispute that appellant's counsel functioned in an exemplary manner to protect the rights of the appellant during the lineup. Appellant's counsel made several requests prior to commencement of the lineup. These included the request to seat witnesses within the room at the discretion of appellant's counsel; the request that certain substitutions be made in lineup members to avoid gross physical dissimilarities; and the request that all members of the lineup remove their footwear. Every request of appellant's counsel was granted. It is undisputed that granting these requests by appellant's counsel resulted in a procedure as to the lineup which was eminently fair.

As previously stated, the lineup produced two positive witness identifications of the appellant as one of the two robbers. During the lineup photographs were taken of the participants in different poses. These photographs were later shown to witnesses who had been unable to attend the lineup, and to some witnesses who had been in attendance. Appellant's counsel were not present when these photographs were exhibited to the witnesses. However, we believe it is sound reasoning that such exhibition of lineup photographs does not contain those potentials for abuse inherent in or pertaining to the lineup proceeding itself. The efforts of appellant's counsel insured that the lineup participants were of similar physical stature. This safeguard was obviously preserved within the photographs. Further, exhibition of the lineup photographs precluded any possibility that the appellant would be portrayed unfairly, such as in the custody of police officers.

Additionally, and most significantly, we are convinced that any possible impropriety which might occur during such exhibition of lineup photographs to witnesses, could be fully uncovered by appellant's counsel during his cross-examination of those witnesses. Unlike those abuses inherent in lineups involving lack of legal representation or counsel, which may escape reconstruction at trial, the possible misuse of lineup photographs, such as singling out accused persons, can be fully explored and uncovered during appropriate trial cross-examination.

Our conclusion that the exhibition of lineup photographs in the instant case produced no error, is strengthened by the reasoning of the Supreme Court in *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), as follows:

convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

We are convinced that the procedure employed in the in-

stant case—the exhibition of lineup photographs to witnesses—was not so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

■■ Appellant's next two assignments of error are closely related and may be considered together; *viz.*, that the trial court erred by allowing the jury to choose between life imprisonment and the death penalty without guidelines or standards on which to base such a choice; and that the trial court erred by following this state's single verdict system of submitting simultaneously to the jury the two distinct issues of guilt and punishment. These contentions have been extensively considered by this court previously in *State v. Smith*, 74 Wn.2d 744, 446 P.2d 571 (1968). Therein, we held that RCW 9.48.030, which permits the jury to make a special finding imposing the death penalty in first-degree murder cases, is not unconstitutional and invalid on the ground that it fails to provide standards to guide the jury in determining whether the death penalty should be imposed. Additionally, that case held the statutory procedure requiring simultaneous submission of the issues of guilt and of imposition of the death penalty in a first-degree murder case, and the resulting requirement that evidence on both issues be presented before a decision on either one, are not constitutionally defective.

Nothing is presented in the instant case to persuade us that the holdings of *Smith* should be overruled. It is of interest to note that both questions are presently before the United States Supreme Court. At this time, however, we affirm the reasoning and result of the *Smith* decision.

■■ Appellant's next contention is that the trial court erred by allowing the imposition of the death penalty under the circumstances of this case because it constituted cruel and unusual punishment. Appellant argues first that the death penalty is generally cruel and unusual punishment. This contention need not be discussed at length. The debate over the wisdom of imposing the death penalty has been carried far and wide from legal and nonlegal centers. The fact remains that the courts have been slow to inter-

fere with the judgment of the state legislature as to appropriate punishment. As yet, there is not federal proscription against imposition of the death penalty; and this court will not substitute its judgment for that of the legislature in prescribing appropriate punishment for criminal offenses. Appellant secondly contends that imposition of the death penalty is cruel and unusual on the facts of the instant case, in that appellant did not, himself, fire the fatal shot causing the death of George Washington Howard. In essence, the appellant attacks the constitutionality of the death penalty as it may be applied in felony-murder cases. It should be noted that an exhaustive search by counsel and further research have not revealed any case involving the constitutionality of the felony-murder rule. Again, however, this court will not substitute its judgment for that of the legislature in providing appropriate punishment for given criminal acts. Mercy to a defendant, or the possibility of rehabilitating the offender, are but two aspects of sentencing; the needs of society, and the deterrence of others similarly inclined are also legitimate ends to be considered by the legislature.

Appellant next assigns error to what he contends was a comment by the trial court upon certain evidence in violation of article 4, section 16, of the Washington Constitution. We find no merit in this contention. To constitute a comment on the evidence, it must appear that the court's attitude toward the merits of the cause are reasonably inferable from the nature or manner of the questions asked and the things said. *State v. Brown*, 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948). In the instant case, appellant alleges that the trial judge commented on the evidence when, after appellant's objection to certain circumstantial evidence, the court in overruling the objection commented: "The state will have to tie it up, of course," and "The burden is on the state to tie this together." Later, in response to appellant's further objections, the trial judge stated: "I think the chain of evidence has been established." A trial court, in passing upon objections to testimony, has the right to give its reasons therefor and the same will not be treated

as a comment on the evidence. The jury in the instant case was instructed that the trial court can have no opinion on the facts of the case and that anything said by the court during the trial on objections must not be taken as an opinion of the court as to the facts of the case or as expressing any opinions of the court thereon. The jury is presumed to have followed the court's instruction. *State v. Willis*, 67 Wn.2d 681, 409 P.2d 669 (1966).

We now direct our attention to two assignments of error alleged personally by the appellant by way of supplemental briefs. Appellant first alleges that the trial court's granting of the state's motion to permit the filing of an amended information is violative of appellant's rights secured by the sixth and fourteenth amendments to the United States Constitution. By the original information in this case, appellant was charged with having committed the actual murder of George Washington Howard. As noted previously, this charge was later amended to charge appellant with the aiding and abetting of the felony-murder.

It is the appellant's contention that the amended information did not sufficiently apprise him of what he must be prepared to meet and defend; and that the amended information did not allow appellant adequate time for trial preparation. These contentions are without merit. The trial court granted appellant's original and supplemental requests for funds to employ an independent investigator. Every accommodation was granted appellant's counsel to insure adequate time and resources in the preparation of his defense. Further, when appellant was arraigned on the amended information, his counsel clearly stated to the court that they were prepared to proceed to trial.

Finally, the appellant argues that he was viewed by certain witnesses in a hallway outside the courtroom. By this event, appellant alleges that he was denied representation at a critical stage. The record is replete with indications of the trial court's concern that such an occurrence should be prevented. Steps were taken to insure that appellant would not be viewed outside the courtroom by either witnesses or jurors. Witnesses were excluded from

the courtroom until called to testify, and were further admonished not to discuss the case with other witnesses yet to be called. It is significant that appellant made no reference to the alleged occurrences during the trial. We find his allegation to be unsupported.

■ In thus reviewing the errors assigned to the trial proceedings by the appellant, we are convinced that appellant was in no way denied a fair trial or adequate representation. Appellant's cause was carefully and competently argued by his counsel both at trial and on appeal. It is, perhaps, appropriate to restate the words of Mr. Justice Cardozo, in *Snyder v. Massachusetts,* 291 U.S. 97, 122, 78 L. Ed. 674, 54 S. Ct. 330, 90 A.L.R. 575 (1934):

> But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance.

The judgment and verdict of the trial court are affirmed.

HAMILTON, C. J., ROSELLINI, HUNTER, HALE, NEILL, McGOVERN, and STAFFORD, JJ., concur.