

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

              Respondent,

    v.

ROBERTO SANCHEZ-RODRIGUEZ,
a/k/a ROBERT CARLOS SANCHEZ,

              Appellant.

No. 67844-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 11, 2013

LEACH, C.J. — Sanchez-Rodriguez appeals his convictions for two counts of assault. He claims that the court abused its discretion in admitting prior threat evidence, a witness impermissibly commented on his guilt, and the court impermissibly commented on the evidence. We disagree and affirm.

## FACTS

Based on allegations that Sanchez-Rodriguez threatened his ex-wife, Jewell Jefferson, and her boyfriend, Derrick Sampson, with a pickaxe, the State charged him with two counts of second degree assault.

Before trial, the State moved to admit evidence that Sanchez-Rodriguez had threatened to kill Jefferson in an earlier incident. Over defense objections, the trial court admitted the evidence under ER 404(b) to show that Jefferson reasonably feared the charged threat would be carried out.

At trial, the evidence established that Sanchez-Rodriguez and Jefferson were married ten years, had three children, and divorced in September 2010.

In late March 2011, Jefferson decided to spend a week in Vancouver, B.C., with her boyfriend, Derrick Sampson. Sanchez-Rodriguez asked if he could stay at Jefferson's home with their children while she was gone. Jefferson said he could, but only if he refrained from drinking around the children. While Jefferson was in Canada, Sanchez-Rodriguez texted and called her repeatedly and twice texted "no boyfriends."

On April 1, 2011, Sampson and Jefferson were on their way home when Jefferson's daughter called. Jefferson learned that Sanchez-Rodriguez had been drinking, was driving her truck, and was headed to a nearby casino. Sampson and Jefferson drove to the casino to look for her truck. As they parked in the casino parking lot, Sanchez-Rodriguez drove up and parked directly behind them.

Jefferson got out and told Sanchez-Rodriguez that she wanted her truck back and accused him of drinking. Sanchez-Rodriguez smelled of alcohol and looked intoxicated. When Jefferson told him she was not leaving the truck with him and would drive him home, Sanchez-Rodriguez became angry and yelled at her. He eventually got in the truck with Jefferson and slammed the door. They then followed Sampson's vehicle to Jefferson's home.

According to Jefferson, Sanchez-Rodriguez argued with her during the drive and repeatedly told her that she did not need a boyfriend. At one point, he slapped her hard on the back.

This argument escalated as they pulled into Jefferson's driveway. Sanchez-Rodriguez said he had found a job and asked if he could move in with her and the children. When Jefferson said no, he punched her on the left side of the face with his fist.

Jefferson said she was calling the police and jumped out of the truck. As she reached for her cell phone, Sanchez-Rodriguez told her not to call and grabbed a pickaxe that was sitting nearby. He raised it above his shoulders with both hands and started walking toward her. Jefferson testified that she thought he was going to kill her because he had threatened to kill her before.

Sampson arrived shortly after Jefferson and heard her tell Sanchez-Rodriguez, "No, don't do this." Sanchez-Rodriguez repeated, "No, no boyfriends." He quickly reached Jefferson. She stuck her head inside the truck for protection. Sanchez-Rodriguez then shoved her hard in the back with the pickaxe.

Sampson said, "That's enough now." Sanchez-Rodriguez turned toward Sampson and, holding the pickaxe up with both hands, said, "This is what you want." Sampson was afraid that Sanchez-Rodriguez was going to swing the pickaxe at him.

According to Jefferson, Sanchez-Rodriguez walked fast towards Sampson with the axe raised. When Sanchez-Rodriguez made a downward movement with the axe, Sampson caught it. Sampson gained control of the pickaxe and

threw it out of the way. Sanchez-Rodriguez then hit Sampson with his fist, and the men fought. During the fight, Sanchez-Rodriguez hit Sampson in the mouth, causing his lip to bleed. The men stopped fighting when Jefferson told them she had called the police.

Whatcom County Sherriff's Deputy Rod Cadman arrived and spoke with Jefferson and Sampson. Jefferson was upset, shaking, and on the verge of tears. Neither Jefferson nor Sampson appeared to have been drinking. Sanchez-Rodriguez, on the other hand, smelled strongly of alcohol, had bloodshot, watery eyes, and swayed back and forth while talking to Cadman.

After waiving his Miranda[1] rights, Sanchez-Rodriguez told Cadman that Jefferson yelled at him on the drive from the casino and started hitting him when they arrived at the house. When he got out of the truck, Sampson ran over and started hitting and kicking him. He then grabbed the pickaxe and swung it in self-defense. He did not know why Jefferson and Sampson attacked him. He said nothing to Cadman about Jefferson threatening to cut him off from his children.

Deputy Cadman also made the following observation about Sanchez-Rodriguez's demeanor:

> [PROSECUTOR]: Other than the symptoms of alcohol consumption that you described before, how would you characterize the Defendant's demeanor when you went and talked to him?

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[WITNESS]: He was surprisingly calm.

[PROSECUTOR]: Why do you say surprisingly?

[WITNESS]: Well, given . . . he had just described that he had been . . . attacked, kicked and punched, you know, by two other people, and he described an attack that was violent enough where he picked up a pickaxe to defend himself. Yet in talking to him, I would expect him to be upset over something like that, and he was surprisingly calm.

[PROSECUTOR]: Did he remain calm as you took him to jail?

[WITNESS]: Yes.

Sanchez-Rodriguez testified that he had memory problems stemming from a head injury he suffered in a car accident in 2006. He denied drinking alcohol before the incident and denied hitting or slapping Jefferson. Contrary to his statements to Deputy Cadman, he testified that Jefferson was not yelling during the ride to the house and that they did not fight about the truck. Instead, he testified that Jefferson told him she was going to take the children to Canada and that she was going to call the police. When he asked why she would call the police, she said she did not want him to see the children. He claimed that she said this repeatedly.

After they got out of the truck, Jefferson pushed him. Sampson then came from behind the truck, and they started fighting. Sanchez-Rodriguez could not say who started the fight. He remembered getting struck with something and trying to get up from the ground. He did not remember if he hit Sampson. He

testified that his memory was not completely clear as to what happened that night.

A jury convicted Sanchez-Rodriguez as charged. He appeals.

DECISION

Sanchez-Rodriguez first contends the trial court abused its discretion under ER 404(b) in admitting his prior threat to kill Jefferson.[2] We disagree.

ER 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Such evidence is admissible for other purposes, however, if it is relevant to a material issue.[3] In this case, the State's assault theory was that Sanchez-Rodriguez put Jefferson and Sampson in reasonable apprehension and imminent fear of bodily injury when he raised the pickaxe in a threatening manner. The trial court admitted Sanchez-Rodriguez's prior threat "to demonstrate [Jefferson's] state of mind, her reasonable fear." This was a proper basis to admit the evidence.[4]

---

[2] We review a trial court's admission of evidence for an abuse of discretion. State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

[3] ER 404(b); State v. Coe, 101 Wn.2d 772, 777, 684 P.2d 668 (1984).

[4] State v. Barragan, 102 Wn. App. 754, 759, 9 P.3d 942 (2000) (victim's knowledge of prior violent acts was admissible to show that victim reasonably feared defendant would carry out threats); State v. Ragin, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999) (defendant's prior violent acts admissible to demonstrate reasonableness of victim's fear following defendant's threats).

Sanchez-Rodriguez contends, however, that the trial court abused its discretion because it relied on and misinterpreted the pluarlity decision in State v. Magers.[5] He argues that only four justices approved the use of prior misconduct evidence to show reasonable fear of bodily injury and that the concurring justices rejected that holding. This argument is flawed in several respects. First, the trial court expressly distinguished Magers and relied instead on "other prior cases."[6] Second, we recently rejected Sanchez-Rodriguez's reading of the Magers concurrence, holding that the concurring justices "did not disagree with the proposition in the lead opinion that admission of evidence of the victim's state of mind would be proper under the right circumstances. Rather, they disagreed with that opinion's application of that proposition to the facts of that case."[7] We ultimately upheld the admission of ER 404(b) evidence "to prove [the victim's] state of mind, a necessary element for the assault charge."[8] We adhere to our decision in State v. Johnson.[9]

Sanchez-Rodriguez next contends Deputy Cadman's testimony that he was "surprisingly calm" was an impermissible opinion on guilt that denied him a

---

[5] 164 Wn.2d 174, 189 P.3d 126 (2008).
[6] See Barragan, 102 Wn. App. at 759; Ragin, 94 Wn. App. at 411-12.
[7] State v. Johnson, ___ Wn. App.___, 289 P.3d 662, 667 (2012).
[8] Johnson, 289 P.3d at 666.
[9] ___ Wn. App. ___, 289 P. 3d 662 (2012). Given our conclusion, we need not reach the State's alternative arguments that the prior threat evidence was also admissible to rebut Sanchez-Rodriguez's self-defense claim and to assess Jefferson's credibility.

fair trial. He concedes this contention is raised for the first time on appeal. He argues, however, that the testimony was manifest constitutional error and therefore reviewable under RAP 2.5(a). Alternatively, he argues that his counsel was ineffective for failing to object to the testimony below. There was no manifest error or ineffective assistance of counsel.

A witness may not offer an opinion regarding the defendant's guilt or veracity because such testimony invades the province of the jury.[10] Opinion testimony from a police officer raises additional concerns because "an officer's testimony often carries a special aura of reliability."[11] But opinion testimony that is based on inferences from the evidence, does not comment directly on the defendant's guilt or veracity, and is otherwise helpful to the jury, does not generally constitute an opinion on guilt.[12]

Here, Deputy Cadman's statement that he was "surprised" by Sanchez-Rodriguez's calm demeanor was not a direct comment on his guilt or veracity, was based on inferences from the evidence, and was arguably helpful to the jury given the nature of the charges and Sanchez-Rodriguez's claim of self-defense.

---

[10] State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); State v. Rafay, 168 Wn. App. 734, 805, 285 P.3d 83 (2012), petition for review filed, No. 87802-1 (Wash. Aug. 27, 2012).

[11] Kirkman, 159 Wn.2d at 928.

[12] Rafay, 168 Wn. App. at 806; City of Seattle v. Heatley, 70 Wn. App. 573, 578, 854 P.2d 658 (1993). In evaluating alleged opinion testimony, courts may consider the type of witness, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008).

Washington courts have repeatedly found comparable comments admissible when, as here, they were based on factual observations that supported the witness's conclusion.[13]

Sanchez-Rodriguez's reliance on State v. Haga[14] is misplaced. The Haga court held it was error to admit an ambulance driver's opinion that the defendant's calm reaction to his wife's death was "unusual."[15] But in Haga, the State attempted to qualify the witness, an ambulance driver, as an expert on the bereavement response. Here, the State did not attempt to cast Deputy Cadman as an expert of any kind. Haga is thus inapposite.[16]

---

[13] See, e.g., State v. Stenson, 132 Wn.2d 668, 724, 940 P.2d 1239 (1997) (paramedic's testimony that he was "surprised" that defendant was victim's husband was not improper); State v. Craven, 69 Wn. App. 581, 585, 849 P.2d 681 (1993) (emergency room worker properly testified that defendant's behavior was unusual); State v. Allen, 50 Wn. App. 412, 416-19, 749 P.2d 702 (1988) (police officer properly testified that defendant's sobbing did not look genuine or sincere); Rafay, 168 Wn. App. at 807-08 (testimony that defendant's grin "kind of shocked" an officer could not reasonably be construed as direct comment on guilt or veracity; rather, "the comments were primarily an attempt to describe the defendants' demeanor").

[14] 8 Wn. App. 481, 507 P.2d 159 (1973).

[15] Haga, 8 Wn. App. at 490-92.

[16] See Allen, 50 Wn. App. at 416-19 (holding that officer's testimony regarding defendant's reaction to her husband's death was properly admitted and distinguishing Haga on ground that ambulance driver in that case purported to testify as an expert on bereavement); Stenson, 132 Wn.2d at 722-24 (paramedic's surprise that defendant was victim's husband was admissible and was distinguishable from Haga because paramedic was not testifying as an expert and was not testifying based on assumptions that were unsupported by his direct observation).

In short, admission of Detective Cadman's testimony was not error, let alone manifest constitutional error, and defense counsel was not ineffective for failing to object to it.

Sanchez-Rodriguez also contends the court made several impermissible comments on the evidence. Again, we disagree.

Under article 4, section 16 of the Washington Constitution, judges are prohibited from conveying to the jury their personal attitudes toward the merits of the case or instructing the jury that facts have been established as a matter of law.[17] A judge's comment violates this provision only if the judge's personal attitudes are "'reasonably inferable from the nature or manner of the court's statements.'"[18]

Sanchez-Rodriguez contends the court commented on the evidence when it orally instructed the jury as follows:

> [Y]ou may hear testimony from this witness about prior incidents between her and the Defendant. I'm allowing this evidence, but you may consider it only for the purpose of evaluating her state of mind, the victim's state of mind. You must not consider the evidence for any other purpose.

According to Sanchez-Rodriguez, the court's reference to the "victim's" state of mind revealed its belief that he was guilty. This inference cannot reasonably be

---

[17] State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997).
[18] State v. Elmore, 139 Wn.2d 250, 276, 985 P.2d 289 (1999) (quoting State v. Carothers, 84 Wn.2d 256, 267, 525 P.2d 731 (1974)).

drawn from the court's single use of the word "victim's."[19]  And even if such an inference could be drawn, the court's single, fleeting reference would, in the context of the entire trial and the court's instructions, be harmless beyond a reasonable doubt.[20]

Sanchez-Rodriguez also contends the court commented on the evidence during the following portion of closing arguments:

> [PROSECUTOR]:  Now, what else do we know?  Counsel talked about concussions and head injury.  There's been no medical evidence in the case at all.  All we have for a story about the fact, about the Defendant's memory loss is, is him—
>
> [DEFENSE COUNSEL]:  Objection.  That mischaracterizes the testimony.
>
> THE COURT:  I don't believe so.
>
> [DEFENSE COUNSEL]:  Jewell Jefferson specifically stated that he suffered from a memory loss as a result of the accident.
>
> THE COURT:  The jury has heard the testimony.

(Emphasis added.)  The emphasized remark did not comment on the evidence. Trial courts have the right to give reasons for their rulings on objections, and

---

[19] See State v. Alger, 31 Wn. App. 244, 248-49, 640 P.2d 44 (1982) (noting that "use of the term 'victim' has ordinarily been held not to convey to the jury the court's personal opinion of the case").

[20] See Alger, 31 Wn. App. at 249 (single reference to "the victim" by the trial judge did not prejudice the defendant's right to a fair trial).  The trial court instructed the jury orally and in writing that they were the sole judges of credibility, that the law prohibited the court from commenting on the evidence in any way, that the court would not intentionally comment on the evidence, and that the jury must completely disregard any remark that appeared to be a comment on the evidence.  We presume the jury follows the trial court's instructions.  State v. Sivins, 138 Wn. App. 52, 61, 155 P.3d 982 (2007).

such reasons will not be treated as comments on the evidence so long as they do not reveal the trial court's attitude toward the evidence.[21] The trial court in this case merely conveyed its memory of the testimony and then indicated that the matter was for the jury to decide. This was proper.[22]

Sanchez-Rodriguez contends the court also commented on the evidence by making its disagreement with the defense apparent during the following exchange:

> [DEFENSE COUNSEL]: [A]nd when Jewell Jefferson testified, there was some, a lot of emotion at different points in her testimony, but the most emotional she got wasn't when she was recounting the incident, wasn't when she was talking about how afraid she was that he was going to kill her because he had that axe. It was when she was confronted with her lies. That's when she broke down.
>
> [PROSECUTOR]: Objection. That's improper argument to use that particular word.
>
> THE COURT: Inconsistencies would be a better term.
>
> [DEFENSE COUNSEL]: Your Honor, I would submit it's appropriate argument.

---

[21] See State v. Pastrana, 94 Wn. App. 463, 480, 972 P.2d 557 (1999).

[22] See State v. Cerny, 78 Wn.2d 845, 855-56, 480 P.2d 199 (1971) (no comment on the evidence when, in response to objections, court said, "'I think the chain of evidence has been established'"); State v. Swan, 114 Wn.2d 613, 657-58, 790 P.2d 610 (1990) (ruling that court would "'accept [proposed expert] as an expert on that subject'" was not comment on the evidence because it offered no opinion on credibility, sufficiency, etc., of expert's testimony); State v. Nesteby, 17 Wn. App. 18, 22, 560 P.2d 364 (1977) (ruling that "[s]he hasn't testified to that. I don't want to comment on the evidence; it's up to the jury to remember" was not comment on the evidence; court merely corrected counsel's recollection of testimony and added that it was up to jury to remember).

THE COURT: The jury will disregard that.

[DEFENSE COUNSEL]: You will decide if it was a lie, whatever, if she was confronted with her glaring omissions, when she was confronted with her inconsistencies, that's when she broke down.

(Emphasis added.) Read in context, this remark was about appropriate or inappropriate language in closing argument and would not reasonably be understood by the jury as a comment on whether Jefferson lied. This conclusion is supported by the fact that defense counsel immediately proceeded to argue, without objection or comment, that the jury would decide "if it was a lie."

Finally, Sanchez-Rodriguez claims the court commented on the evidence during the following portion of the prosecutor's rebuttal argument:

[PROSECUTOR]: I would also ask you to, yes, please listen to Deputy Cadman. Trust Deputy Cadman. Deputy Cadman said this man's behavior was not consistent with what he said had happened.
Counsel—

[DEFENSE COUNSEL]: Objection. That's—that mischaracterizations [sic] the testimony.

THE COURT: I think it's what the deputy said.

[DEFENSE COUNSEL]: Is the Court saying that's what the deputy said?

THE COURT: I said it's an argument that can be made based on what the deputy said.

[DEFENSE COUNSEL]: I maintain my objection.

(Emphasis added.) Again, when read in context, the challenged remark was not a comment on the evidence. The court's initial remark merely indicated the

- 13 -

court's memory of the testimony. It did not comment on the merits of the case or the veracity of a witness. To the extent there could be any impropriety in the initial remark, the court and counsel clarified that the court was only saying that the challenged argument was the prosecutor's interpretation of the deputy's testimony. In addition, any comment on the evidence was cured by the court's instructions.[23]

Given our conclusion that Sanchez-Rodriguez has not established error, his claim of cumulative error fails as well.

Affirmed.

_Leach, C.J._

WE CONCUR:

_Appelwick, J._                                      _Lau, J._

---

[23] See Alger, 31 Wn. App. at 249; Silvins, 138 Wn. App. at 61; Elmore, 139 Wn.2d at 276 (any comment on the evidence was cured by instruction to disregard same); Egede-Nissen v. Crystal Mountain, Inc., 93 Wn.2d 127, 141, 606 P.2d 1214 (1980) (isolated judicial comment "may be cured by an instruction").