NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BURL LAWRENCE ROBINSON, *Appellant.*

No. 1 CA-CR 14-0783
FILED 10-01-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-112393-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Colin F. Stearns
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

**¶1** This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Defendant Burl Lawrence Robinson has advised us that after searching the entire record he has been unable to discover any arguable questions of law, and has filed a brief requesting us to conduct an *Anders* review of the record. Robinson did not take the opportunity to file a supplemental brief.

### FACTS[1]

**¶2** Two women were standing in a front yard on March 2, 2012, when they saw a gold-colored pickup truck driving slowly down the street. One, A.T., noticed that the driver's head was tilted forward and his eyes were closed. She watched the truck crash into her husband's parked pickup truck. Fearing that the driver, who was later identified as Robinson, had experienced a heart attack, the two witnesses went to help. The two women, with others, approached the truck and someone opened the door and tried to wake Robinson, who appeared to be sleeping. When he did not respond, someone called 9-1-1.

**¶3** When Robinson finally woke up, he stood next to the driver's door, was unresponsive, and stared into the distance for several minutes. He then began acting erratically, jumping in and out of the bed of the pickup truck, and running around. He pointed at vehicles driving by saying, "I got you," or "You guys can't catch me," before trying to run away.

**¶4** When the Phoenix Fire Department arrived, Robinson ran in front of the fire truck, attempting to stop it. He was uncooperative and unwilling to allow emergency personnel to assess him for injuries. Fearing

---

[1] We view the facts "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588-89, 951 P.2d 454, 463-64 (1997).

that Robinson would get injured in traffic, Captain Caskey submitted an emergency request for police assistance. Officers Miller and Francetic responded, and were able to identify Robinson when he provided his Arizona identification card. A subsequent records check revealed that Robinson's driver's license had been suspended.

¶5        Officer Francetic noticed that Robinson had a glazed look on his face, his eyes were bloodshot, and that he was experiencing extreme mood changes. Robinson, however, told Officer Miller that he had not been driving the truck, and refused to submit to a field sobriety test. After being taken to and admitted into the hospital, Robinson's blood was drawn and given to the police for testing. The laboratory results revealed that his blood tested positive for Phencyclidine ("PCP"), a prohibited drug as defined in Arizona Revised Statutes ("A.R.S.") section 13-3401 (2014).[2]

¶6        Robinson was indicted for aggravated driving or actual physical control of a vehicle while under the influence of alcohol or any drug while his privilege of driving was suspended, cancelled or revoked, a class 4 felony, and with aggravated driving or actual physical control of a vehicle while there was any drug defined in Arizona law in his body while his driver's license or privilege to drive was suspended, cancelled, or revoked, a class four felony. He pled not guilty, and subsequently was evaluated pursuant to Arizona Rule of Criminal Procedure ("Rule") 11 to determine whether he was competent to stand trial. After he was determined to be competent, the case proceeded to trial.

¶7        In addition to Captain Caskey, the police officers, and the two witnesses to the slow-speed accident, the jury heard from Gayle Swanson, a forensic scientist, about the results of Robinson's blood test and the impact of PCP on the body, including impairing the mental process, speech, and vision, and causing delusions and hallucinations. The jury also heard testimony from an investigator from the Motor Vehicle Department that Robinson's driving privileges had been suspended and had not been reinstated by the time of the accident. After the State rested, Robinson unsuccessfully moved for a Rule 20 judgment of acquittal.

¶8        After the defense rested, the jury was instructed and heard closing arguments, and found Robinson guilty on both counts. The case moved to an aggravation hearing, and after the presentation of evidence

---

[2] We cite the current version of the applicable statutes unless otherwise noted.

and arguments, the jury found that Robinson had been on pretrial release in CR 2011-006914 at the time of the offense.

**¶9**      Before sentencing, Robinson asked for a Rule 26.5 mental health examination. The court granted the request, and Dr. Drake evaluated Robinson and provided the court with a mental health evaluation to assist with sentencing. At sentencing, the court considered Robinson's five historical felony convictions, the mental health evaluation, and the fact that he had been on a pretrial services release when he committed the offenses. The court also considered Robinson's expressed remorse for his actions and that his family needed his support. Robinson was then sentenced to prison for twelve years, and was given credit for 461 days of presentence incarceration on both counts.

**¶10**      We have jurisdiction over this appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶11**      We have read and considered counsel's brief and have searched the entire record for reversible error. We find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881.

**¶12**      We note, however, that during the closing rebuttal argument, the prosecutor stated:

> Now, you've been told in the jury instructions, and Miss Cheatham has pointed out to you, and I would wholeheartedly agree, the defendant has no obligation to produce testimony, but when something has been presented to you there has to — and there's an alternative explanation, *if I was a defendant, I'd try to explain why I was there*.

(Emphasis added.) Defense counsel immediately objected to the statement, but the court overruled the objection.

**¶13**      Both the United States Constitution and the Arizona Constitution prohibit a prosecutor from stating or implying that a defendant's failure to testify "supports an inference of guilt." U.S. Const.

amend. V; Ariz. Const. art. 2, § 10; *see* A.R.S. § 13–117(B). Because the defense objected to the prosecutor's argument, we review for harmless error. *See State v. Valverde*, 220 Ariz. 582, 585, ¶ 11, 208 P.3d 233, 236 (2009) (citing *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005)). As a result, our "inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39, 189 P.3d 366, 373 (2008) (quoting *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993)). Moreover, we review the statement in its context and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify. *See, e.g., State v. Ramos*, 235 Ariz. 230, 235, ¶ 13, 330 P.3d 987, 992 (App. 2014).

¶14 Even if we assume that the court erred by failing to sustain the objection and give an appropriate limiting instruction (the defense is not required to produce any evidence because the burden of proof never shifts from the State to prove its case beyond a reasonable doubt, as well as the fact that the defendant does not have to testify), the error was harmless because there was overwhelming evidence of Robinson's guilt. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191 ("Error, be it constitutional or otherwise, is harmless if we can say beyond, a reasonable doubt, that the error did not contribute to or affect the verdict."); *see also State v. Scarborough*, 110 Ariz. 1, 5, 514 P.2d 997, 1001 (1973) (noting that a prosecutor's reference to the defendant's failure to exculpate himself was harmless error because the State had provided overwhelming evidence of the defendant's guilt).

¶15 The State presented unequivocal evidence that Robinson was guilty of both counts beyond a reasonable doubt, independent of the prosecutor's statement during his closing rebuttal argument. In addition to the two witnesses who watched Robinson's slow-speed accident and placed him behind the wheel and in control of the vehicle, the jury heard from Captain Caskey and the police officers who observed Robinson's conduct at the scene, and from the forensic scientist who discovered PCP in Robinson's blood and explained the impact of PCP on the human body. The evidence, as a result, supports the guilty verdicts beyond a reasonable doubt. Consequently, the errant statement by the prosecutor, though inappropriate, was harmless.

¶16 We have read and considered the opening brief and have searched the entire record for reversible error. We find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. Robinson was represented by counsel at all

stages of the proceedings, and the concurrent sentences imposed were within the statutory limits.

¶17      After this decision is filed, counsel's obligation to represent Robinson in this appeal has ended. Counsel must only inform Robinson of the status of the appeal and Robinson's future options, unless counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Robinson may, if desired, file a motion for reconsideration or petition for review pursuant to the Arizona Rules of Criminal Procedure.

## CONCLUSION

¶18      Accordingly, we affirm Robinson's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama